[Cite as *State v. Luce*, **2018-Ohio-3865.**]

COURT OF APPEALS
ASHLAND COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. John W. Wise, P. J. |
| Plaintiff-Appellee | Hon. Patricia A. Delaney, J.<br>Hon. Earle E. Wise, Jr., J. |
| -vs- | |
| | Case No. 17 COA 040 |
| DANIELLE LUCE | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDING:      Criminal Appeal from the Court of Common
Pleas, Case No.  17 CRI 026

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      September 24, 2018

APPEARANCES:

For Plaintiff-Appellee      For Defendant-Appellant

CHRISTOPHER R. TUNNELL      BRIAN A. SMITH
PROSECUTING ATTORNEY      BRIAN A. SMITH LAW FIRM
VICTOR R. PEREZ      755 White Pond Drive
ASSISTANT PROSECUTOR      Suite 403
110 Cottage Street      Akron, Ohio  44320
Ashland, Ohio  44805

*Wise, John, P. J.*

{¶1}    Defendant-Appellant Danielle R. Luce appeals her multi-count conviction, in the Court of Common Pleas, Ashland County, for involuntary manslaughter, aggravated drug trafficking, corrupting another with drugs, and other offenses. Appellee is the State of Ohio. The relevant facts leading to this appeal are as follows:

{¶2}    On August 8, 2016, officers from the Ashland Police Department responded to a suspected drug overdose at the Cleveland Avenue trailer residence of Appellant Danielle Luce and her husband, Christopher Luce. Officers observed that Christopher was unresponsive and having difficulty breathing. Emergency personnel administered multiple doses of Narcan and were able to revive Christopher. In the meantime, appellant appeared to have difficulty comprehending what was happening, was unsteady on her feet, and seemed to be under the influence of something.

{¶3}    Responding police officers found items potentially related to drug use in the Luces' trailer, including a line of powder and a marijuana pipe in a dresser. Tr. at 204. They also discovered a wooden box inside a closet. The box contained "multiple" syringes, along with various tubes of made of plastic, glass, and/or metal. Tr. at 187. Officers also found razor blades, a shoe lace, syringe caps, syringes, a crack pipe, two spoons, cotton, and a syringe filled with a brown liquid. Tr. at 208-209, 216, 218. Appellant admitted to having recently snorted heroin, which she had purchased near a gas station in Mansfield, Ohio. She told officers the heroin in question did not smell or taste right, but she did not say anything at that time about selling any of it to someone else. She was eventually taken into police custody.

**{¶4}** The next day, on August 9, 2016, Jeffrey Sanders was discovered by his sister in his residence at the Almond Tree Inn, a trailer court. He was slumped over the tub in the bathroom with blood and vomit around him. Tr. at 283. Ashland Assistant Fire Chief Gabriel Campbell was one of the first responders on the scene. He estimated Sanders had been dead for five or six hours by observing the body's lividity. Tr. at 309.

**{¶5}** Detective Brian Evans was assigned to investigate. Det. Evans found a spoon with cotton, syringe, and a Q-tip in Sanders' bathroom. Tr. at 414. He learned that there had been an overdose incident at the Luces' residence the evening before. Tr. at 420. He also found that the Luces lived just one block away from Sanders.

**{¶6}** Officers had collected appellant's cell phone as evidence and obtained permission from appellant to search it. Det. Evans thereupon reviewed appellant's cell phone history, noting that several texts and/or calls had been made on August 8, 2016 between her and a contact listed as "Jeffrey S.A." One text from Jeffrey S.A. stated that this individual only had $6.00 to spend, but asked "would you work a trade with me?" Tr. at 431.

**{¶7}** Det. Evans continued his investigation. Ultimately, appellant admitted to him that Sanders had come to the Luces' trailer with $20.00 cash, left the money, and took with him a small quantity of drugs in a "corner bag" that had been left for him on a tray.

**{¶8}** Det. Evans also collected security video from "Donna D's," a store in the vicinity of the Luces' trailer. He requested video in the time frame of 5:00 PM to 7:00 PM on August 8, 2016. In one segment, Sanders is seen riding a bike in a direction that leads to the Luces' residence. Sanders is also later seen riding in a direction away from the Luces' residence.

**{¶9}** An autopsy was conducted on Sanders, as further discussed *infra*. His cause of death was determined to be acute intoxication by Carfentanil.

**{¶10}** On March 9, 2017, the Ashland County Grand Jury indicted appellant as follows:

**{¶11}** Count 1: involuntary manslaughter, R.C. 2903.04(A), a felony of the first degree; Count 2: corrupting another with drugs, R.C. 2925.02(A)(3), a felony of the second degree; Count 3: aggravated trafficking in drugs, R.C. 2925.03(A)(1), a felony of the fifth degree; Count 4: aggravated trafficking in drugs, R.C. 2925.03(A)(2), a felony of the fifth degree; Count 5: aggravated possession of drugs, R.C. 2925.11(A), a felony of the fifth degree; Count 6: possession of drug abuse instruments, R.C. 2925.12(A), a misdemeanor of the second degree; Count 7: illegal use or possession of drug paraphernalia, R.C. 2925.14(C)(1), a misdemeanor of the fourth degree; Count 8: illegal use or possession of marijuana drug paraphernalia, R.C. 2925.141(C), a minor misdemeanor; Count 9: aggravated possession of drugs, R.C. 2925.11(A), a felony of the fifth degree; Count 10: possession of drug abuse instruments, R.C. 2925.12(A), a misdemeanor of the second degree; Count 11, possession of drugs, R.C. 2925.11(A), a misdemeanor of the first degree.

**{¶12}** Appellant initially pled not guilty to all eleven counts. However, appellant subsequently entered pleas of guilty to Counts 9, 10, and 11. The matter then proceeded to a jury trial on Counts 1 through 8 commencing on August 1, 2017. Christopher Luce was also tried as a co-defendant.

**{¶13}** After hearing the evidence and arguments, the jury found appellant guilty on all eight counts. On October 3, 2017, the trial court sentenced appellant inter alia to

eight years in prison for involuntary manslaughter, merging therewith the offense of corrupting another with drugs. On the two felony counts of aggravated trafficking in drugs, appellant received sentences of nine months each in prison, concurrent. On the felony counts of aggravated possession of drugs, appellant received a sentence of six months each in prison, also concurrent. On the remaining counts, all misdemeanors, all jail sentences were ordered to be served concurrently. Appellant's aggregate prison sentence was therefore eight years, to be served consecutively to her sentence under Ashland County Common Pleas number 17-CR-016.

{¶14} On November 1, 2017, appellant filed a notice of appeal. She herein raises the following three Assignments of Error:

{¶15} "I. APPELLANT'S CONVICTIONS FOR INVOLUNTARY MANSLAUGHTER AND CORRUPTING ANOTHER WITH DRUGS WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE.

{¶16} "II. APPELLANT'S CONVICTIONS FOR COUNTS ONE THROUGH EIGHT OF THE INDICTMENT WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶17} "III. APPELLANT'S SENTENCE WAS NOT SUPPORTED BY THE RECORD."

I.

{¶18} In her First Assignment of Error, appellant argues her convictions for involuntary manslaughter and corrupting another with drugs were not supported by sufficient evidence. We disagree.

**{¶19}** In reviewing a claim of insufficient evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus. It is well-established that the State bears the burden of establishing each and every element of a charged crime and must do so with proof beyond a reasonable doubt. *See In re L.R.*, 8th Dist. Cuyahoga No. 93356, 2010–Ohio–15, 2010 WL 27862, ¶ 11.

*Involuntary Manslaughter*

**{¶20}** Appellant herein was convicted *inter alia* of involuntary manslaughter (Count 1), which is set forth in R.C. 2903.04(A) as follows: "No person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a felony."

**{¶21}** The predicate offense in this instance (the same as Count 3) was aggravated trafficking in drugs, in violation of R.C. 2925.03(A)(1). This statute states that "[n]o person shall knowingly *** [s]ell or offer to sell a controlled substance or a controlled substance analog."

**{¶22}** R.C. 2901.22(B) states as follows: "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is

established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact."

**{¶23}** Ohio courts have recognized that "[t]he element of proximate cause is satisfied where the defendant, 'sets in motion a sequence of events that make the death of another a direct proximate and reasonably inevitable consequence.' " *State v. Feltner*, 12th Dist. Butler No. CA2008–01–009, 2008–Ohio–5212, ¶ 12, quoting *State v. Lovelace*, 137 Ohio App.3d 206, 215 (1st Dist.1999) (internal quotations partially omitted)..

**{¶24}** Appellant first challenges the nexus between Sanders' death and the presence of Carfentanil. The record reveals that Jennifer Acurio, a forensic scientist from BCI, performed tests on some of the evidence in this case. Tr. at 377. Acurio tested State's Exhibit 17, a sample of residue found in the Luces' residence, which was found to "show" Carfentanil. Tr. at 382. Acurio further tested State's Exhibit 18, brown liquid from a syringe from the Luces' residence, which was also found to contain Carfentanil. Tr. at 384. Finally, Acurio tested State's Exhibit 19, the pipe found in the Luces' residence, and found it contained marijuana. Tr. at 385.

**{¶25}** The Ashland County Coroner, Dr. Dale Thomae, oversaw the investigation of Sanders' death. Tr. at 333. However, he arranged for Cuyahoga County officials to perform the autopsy, which was ultimately handled by Dr. Todd Barr. Tr. at 319. Dr. Barr testified that Sanders was a healthy twenty-one year old male. Tr. at 353. The toxicology testing in Cuyahoga County showed that there were indicators of a "fentanyl analog" in his blood. Tr. at 356. However, Cuyahoga County was not equipped to reach a conclusion on the specifics of said analog; therefore, necessary samples were sent to AIT Laboratory in Indianapolis. Tr. at 353-356. The toxicology report from AIT indicated that Carfentanil

was found in Sanders' blood and urine. Tr. at 356. He estimated that Sanders had been dead at least eight hours when first responders arrived, in contrast to Assistant Fire Chief Campbell's estimate of five to six hours. *See* Tr. at 338.

**{¶26}**  Dr. Barr told the jury that Carfentanil is an analog of fentanyl. Tr. at 355. Dr. Barr testified that someone with Carfentanil in his or her system would have a bloody fluid buildup in his lungs that could come out of the nose and mouth. Tr. at 357-359. Dr. Barr concluded that Sanders' cause of death was acute intoxication by Carfentanil. Tr. at 359. Dr. Barr further testified that any amount of Carfentanil can be lethal. Tr. at 368. Dr. Thomae declared Sanders' cause of death to be from "sudden cardiopath due to deep ventricular arrhythmia and due to acute intoxication by Carfentanil." Tr. at 335. Dr. Thomae also testified that Carfentanil was designed to be used on large animals, not humans. Tr. at 342. Carfentanil is stronger than fentanyl, which itself is stronger than heroin. *Id.*

**{¶27}**  In sum, while the initial testing showed "there were certain peaks consistent with a fentanyl analog" in Sanders' blood (*see* Tr. at 356), further testing by an outside lab provided evidence that the analog was indeed Carfentanil, leading to the coroner's determination that intoxication via this substance was the cause of the victim's death. We therefore find no grounds for reversal on this basis for want of sufficient evidence.

**{¶28}**  Appellant next contends the State failed to prove that appellant "knowingly" supplied Sanders with Carfentanil. She notes that Dr. Thomae, the Ashland County Coroner, testified that he had not previously seen any Carfentanil overdoses in his eight years in office. Tr. at 345. Trial counsel for Christopher Luce proffered that Cuyahoga County was limited on testing for Carfentanil because "this is a new issue that has been

on the streets ***." Tr. at 326. Appellant urges that even though she tried to tell Sanders not to use the heroin because it had a strange taste or smell, there was no proof that she knew about the Carfentanil in it and the dangers of the latter substance. Assistant Fire Chief Campbell said he had started seeing Carfentanil in the "recent past" but could not give a more specific time frame. Tr. at 314-315. Dr. Barr noted that he had seen just ten Carfentanil cases in the last year. Tr. at 365.

{¶29} However, we first note that "[i]t is not necessary that the accused be in a position to foresee the precise consequence of his conduct; only that the consequence be foreseeable in the sense that what actually transpired was natural and logical in that it was within the scope of the risk created by his conduct." *State v. Wells*, 12th Dist. Warren No. CA2016-02-009, 2017-Ohio-420, ¶ 35, citing *State v. Losey,* 23 Ohio App.3d 93, 96 (10th Dist.1985). Furthermore, "*** the word 'knowingly' is an adverb which modifies the verb 'sell' or 'offer.'" *State v. Ward*, 3rd Dist. Crawford No. 3-17-02, 2017-Ohio-8518, ¶ 15, citing *State v. Patterson,* 69 Ohio St.2d 445, 447, 432 N.E.2d 802 (1982), *overruled in part on other grounds*. Ohio courts are thus not required to read into R.C. 2925.03(A) an additional element of knowledge of the nature of the substance. *Id.* In other words, the State is only required to prove beyond a reasonable doubt that the accused knowingly sold or offered to sell *a controlled substance. Ward* at ¶ 15, citing *State v. Stover,* 11th Dist. Lake No. 2015–L–041, 2016–Ohio–1361, ¶ 14 (emphasis added).

{¶30} Thus, even if appellant "only" sought to sell heroin on this occasion and had no interest in supplying anyone with Carfentanil, she was still choosing to engage in the dangerous and illegal business of street-level trafficking in controlled substances. Before this Court takes the step of overturning a jury verdict on the basis of insufficient evidence,

we must remind ourselves that our standard is based on the "rational trier of fact" standard set forth in *Jenks, supra.* Perhaps the General Assembly will further consider whether updates are needed in the Revised Code to more specifically address these types of tragic "drug within a drug" fatalities. However, as summarized above, upon review of the present record and transcript in a light most favorable to the prosecution, we find that reasonable jurors could have found appellant guilty beyond a reasonable doubt of the offense of involuntary manslaughter as charged.

*Corrupting Another with Drugs*

**{¶31}** Appellant was also convicted (Count 2) of corrupting another with drugs under R.C. 2925.02(A)(3), which states as follows: "No person shall knowingly * * * [b]y any means, administer or furnish to another or induce or cause another to use a controlled substance, and thereby cause serious physical harm to the other person, or cause the other person to become drug dependent."

**{¶32}** Appellant points out that Carfentanil was the only substance named in Count 2 of the indictment under the "to wit" language. However, as summarized above, upon review of the record and transcript in a light most favorable to the prosecution, we find that reasonable jurors could have found appellant guilty beyond a reasonable doubt of the offense corrupting another with drugs as charged.

**{¶33}** Appellant's First Assignment of Error is overruled.

II.

**{¶34}** In her Second Assignment of Error, appellant argues her convictions for Counts 1 through 8 of the indictment were against the manifest weight of the evidence. We disagree.

**{¶35}** Our standard of review on a manifest weight challenge to a criminal conviction is stated as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. *See, also*, *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541.

**{¶36}** Even though a manifest weight analysis may involve an appellate court's consideration of credibility (*see State v. Sanders*, 76 N.E.3d 468, 2016–Ohio–7204 (5th Dist.), ¶ 38), the weight to be given to the evidence and the credibility of the witnesses are primarily issues for the trier of fact (*see, e.g.*, *State v. Jamison* (1990), 49 Ohio St.3d 182, 552 N.E.2d 180).

### Counts 1 through 4

**{¶37}** As discussed above, the first three counts against appellant in this matter were, respectively, involuntary manslaughter, corrupting another with drugs, and aggravated trafficking in drugs (R.C. 2925.03(A)(1)). The fourth count was also aggravated trafficking in drugs, but under R.C. 2925.03(A)(2). This latter statute states: No person shall knowingly *** [p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person."

{¶38} Appellant first calls into question some of the video evidence, namely, security footage from a nearby business showing Sanders passing by on his way to and from appellant's residence on the day of the drug transaction. Because the time recordings shown on the video were inaccurate, appellant challenges the State's attempt to connect Sanders' trip with the texts and calls from appellant to Sanders.[1] We note the State argued that based on the shadows in the video caused by the sun, Sanders passed the business between 5:00 PM and 7:00 PM on August 8, 2016, and that Sanders appeared to be wearing the same clothing as when his body was discovered. However, Charles McCarty, a defense witness called by appellant's co-defendant Christopher Luce, testified that Sanders was visiting at McCarty's residence from 5:30 PM to 7:30 PM on August 8, 2016. Tr. at 658. McCarty stated on cross-examination that he (McCarty) had used Suboxone and consumed three or four drinks that night, but that he was not high. Tr. at 668-669.

{¶39} Appellant also refers to evidence that Lieutenant Steven Hoover of the Ashland Police Department received a report of an unidentified automobile pulling up to Sanders' trailer at about 2:30 AM on August 9, 2016. Tr. at 539, 679. This appears to stem from an observation made by Thomas Hatberg, who also testified as a defense witness for Christopher Luce. Hatberg, a neighbor of Sanders, told jurors that he had seen an unfamiliar car sitting near Sanders' trailer between 1:00 AM and 3:15 PM on the early morning of August 9, 2016. Tr. at 641. We note Detective Evans appeared to have

---

[1]   The State called Mason Xiebel, an employee of the security company, Smart Digital, to testify concerning the footage. He explained that "[t]he DVR was not set to Eastern Standard Time." Tr. at 466. However, defense counsel objected to an additional question concerning how the recording device had been set up with an erroneous time. The trial court sustained the objection, finding that the answer was speculative. *Id.*

concluded that the car's description did not match that of the vehicle owned or used by Christopher Luce. Tr. at 552.

**{¶40}** Appellant secondly reiterates some of the argument as to causation and knowledge presented as part of her "sufficiency" claim, *supra*.[2]

**{¶41}** It has been aptly stated that a jury, in making factual determinations, "cannot help but rely upon the collective wisdom embodied in the life-experiences of the individual jurors ***." *State v. Bays*, 2nd Dist. Greene No. 95-CA-118, 1998 WL 32595, *aff'd,* 87 Ohio St.3d 15, 1999-Ohio-216, 716 N.E.2d 1126 (1999). Furthermore, although the testimony of witnesses on behalf of the State and the defense may conflict, a conviction is not against the manifest weight because the jury chose to credit the State's version of events. *See State v. Breneman*, 9th Dist. Wayne No. 11CA0039, 2012-Ohio-3632, ¶ 9, citing *State v. Peasley,* 9th Dist. No. 25062, 2010–Ohio–4333, ¶ 18 (internal quotations omitted). Specifically, even in addressing a manifest weight claim, we remain mindful that the jurors, as the firsthand triers of fact, are patently in the best position to gauge the truth as to a defendant's advancement of an alibi. *See State v. Smith*, 5th Dist. Licking No. 14 CA 83, 2015-Ohio-1610, ¶ 24.

**{¶42}** Upon review, we find the jury, in weighing the testimony of the various witnesses, and taking into account appellant's admissions to law enforcement concerning the heroin transaction, did not clearly lose its way and create a manifest miscarriage of

---

[2] Appellant also presents a cursory challenge regarding the lack of testimony "regarding the contents and methodology of the AIT report" from the lab in Indianapolis. Appellant's Brief at 13. Without additional comment, we note R.C. 313.17 states in pertinent part that "[a] report shall be made from the personal observation by the coroner or his deputy of the corpse, from the statements of relatives or other persons having any knowledge of the facts, and *from such other sources of information as are available*, or from the autopsy." (Emphasis added.)

justice requiring that appellant's convictions under Counts 1 through 4 be reversed and a new trial ordered.

### Counts 5 through 8

**{¶43}** As an initial matter, we note that while Count 5 was felony of the fifth degree, Counts 6 and 7 were misdemeanors for which appellant received thirty-day jail sentences, to be served concurrently with some of the other counts, and fines of zero dollars. Finally, Count 8 was a minor misdemeanor, for which he was fined $100.00. We have recognized that where a defendant, convicted of a misdemeanor criminal offense, has voluntarily paid the fine or completed the sentence for that offense, an appeal is moot when no evidence is offered from which an inference can be drawn that the defendant will suffer some collateral disability or loss of civil rights from such judgment or conviction. *See State v. Crandell,* 5th Dist. Licking No. 02CA115, 2003–Ohio–2512, (citation omitted). The briefs do not discuss this potential mootness issue, and we observe that the trial court also ordered court costs and restitution, the present payment status of which is unknown to this Court.

**{¶44}** We therefore proceed to the merits of appellant's argument, which chiefly challenges the proof of her identity, as opposed to that of Christopher Luce, as the possessor of the substances, drug instruments, and paraphernalia found inside the trailer. She adds that the jury was not instructed in this case on constructive possession or complicity.

**{¶45}** In essence, Count 5 of the indictment went to possession of Carfentanil, Count 6 went to possession of a hypodermic device for shooting drugs, Count 7 went to possession of drug paraphernalia in the form of a zipper pouch, spoons, a wooden box,

cotton, tubes, and a glass dish, and Count 8 went to possession of a marijuana pipe. It is well-established that the granting of a new trial should be exercised only in the exceptional case in which the evidence "weighs heavily" against the conviction. *See Martin, supra,* at 175, 485 N.E.2d 717. The evidence at trial demonstrated that appellant admittedly had used heroin and sold it out of her residence, allowing the jurors to properly infer that the contraband items in question were connected to her. Upon review, we hold the finders of fact did not clearly lose their way and create a manifest miscarriage of justice requiring that appellant's convictions on Counts 5 through 8 be reversed and a new trial ordered.

**{¶46}** Appellant's Second Assignment of Error is overruled.

III.

**{¶47}** In her Third Assignment of Error, appellant challenges her sentence, in essence contending that the "seriousness" factors set forth by the General Assembly in R.C. 2929.12 weigh against her eight-year prison term for involuntary manslaughter.

**{¶48}** The General Assembly, under R.C. 2953.08(G)(2), has set forth our general standard of review in felony sentencing matters. However, this Court recognized that subparagraph (G)(2)(a) does not reference R.C. 2929.11 or the seriousness and recidivism factors of R.C. 2929.12. *See State v. Schuttinger*, 5th Dist. Licking No. 13 CA 83, 2014-Ohio-3455 ¶ 25. We thus continued to recite the *Kalish* approach in regard to R.C. 2929.11 and 2929.12 issues. *See State v. Oester,* 5th Dist. App. No. 2012CA00118, 2013–Ohio–2676, ¶ 51, citing *State v. Kalish,* 120 Ohio St.3d 23, 896 N.E.2d 124, 2008–Ohio–4912. But the Ohio Supreme Court has now made clear that *Kalish* is not the proper standard for R.C. 2929.11 and 2929.12 appellate review. *See State v Marcum,* 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 23.

**{¶49}** Appellant points *inter alia* that she had no prior felony convictions at the time of her sentencing, and that she showed remorse for what occurred. She also reiterates her position that she did not know about the specific presence of Carfentanil in the drug transaction at issue. Finally, she points to her score of "low to moderate" for recidivism set forth in the PSI.

**{¶50}** A presumption of regularity attaches to all trial court proceedings. *See, e.g., Black v. Chiropractic Assocs. of Zanesville, L.L.C.,* 5th Dist. Muskingum No. CT2013–0012, 2014–Ohio–192, ¶ 20, citing *Chari v. Vore* (2001), 91 Ohio St.3d 323, 325, 744 N.E.2d 763. Upon review, we hold the eight-year sentence for involuntary manslaughter (which was also the aggregate term for all of the offenses) was within the pertinent statutory ranges, and we otherwise do not find by clear and convincing evidence that the record does not support her sentence.

**{¶51}** Appellant's Third Assignment of Error is overruled.

**{¶52}** For the reasons stated in the foregoing opinion, the judgment of the Court of Common Pleas, Ashland County, Ohio, is hereby affirmed.

By: Wise, John, P. J.
Delaney, J., and
Wise, Earle, J. concur.


JWW/d 0907