[Cite as *State v. Carpenter*, 2019-Ohio-58.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## SENECA COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,               CASE NO.  13-18-16

      v.

TYREE L. CARPENTER,             O P I N I O N

      DEFENDANT-APPELLANT.

Appeal from Seneca County Common Pleas Court
Trial Court No. 16-CR-0073

**Judgment Affirmed**

**Date of Decision:**   **January 14, 2019**

APPEARANCES:

    *Robert A. Miller* **for Appellant**

    *Stephanie J. Kiser* **for Appellee**

**ZIMMERMAN, P.J.**

{¶1} Defendant-appellant, Tyree L. Carpenter ("Carpenter"), appeals the April 27, 2018 judgment entry of sentence of the Seneca County Court of Common Pleas. For the reasons that follow, we affirm.

{¶2} This case stems from a series of drug-related events, including the overdose of Meredith Breech ("Breech") and overdose death of Steffen Yarris ("Yarris"), that took place between August 2015 and April 2016 in Fostoria, Ohio. The city of Fostoria is situated at the convergence of Hancock, Seneca, and Wood Counties. However, the events at issue in this case transpired in only Hancock and Seneca Counties.

{¶3} On August 8, 2016, the Seneca County Grand Jury indicted Carpenter on thirteen counts, including: Counts One and Three of possession of heroin in violation of R.C. 2925.11(A), (C)(6)(a), both fifth-degree felonies; Count Two of trafficking in cocaine in violation of R.C. 2925.03(A)(1), (C)(4)(a), a fifth-degree felony; Counts Four and Six of trafficking in heroin in violation of R.C. 2925.03(A)(1), (C)(6)(a), both fifth-degree felonies; Counts Five and Seven of corrupting another with drugs in violation of R.C. 2925.02(A)(3), (C)(1)(a), both second-degree felonies; Count Eight of aggravated trafficking in drugs in violation of R.C. 2925.03(A)(2), (C)(1)(a), a fourth-degree felony; Count Nine of possession of cocaine in violation of R.C. 2925.11(A), (C)(4)(a), a fifth-degree felony; Counts

Ten and Thirteen of possessing criminal tools in violation of R.C. 2923.24(A), (C), both fifth-degree felonies; Count Eleven of trafficking in heroin in violation of R.C. 2925.03(A)(2), (C)(6)(c), a third-degree felony; and Count Twelve of trafficking in cocaine in violation of R.C. 2925.03(A)(2), (C)(4)(b), a fourth-degree felony. (Doc. No. 4). The indictment included forfeiture specifications as to Counts Three, Eight, Nine, Eleven, and Twelve and specifications that the offense was committed in the vicinity of a juvenile as to Counts Eleven and Twelve. (*Id.*). On August 17, 2016, Carpenter appeared for arraignment and entered pleas of not guilty. (Doc. No. 10).

{¶4} On August 30, 2016, under a superseding indictment, the Seneca County Grand Jury indicted Carpenter on three additional counts: Count Fourteen of aggravated trafficking in drugs in violation of R.C. 2925.03(A)(2), (C)(1)(a), a fourth-degree felony; Count Fifteen of corrupting another with drugs in violation of R.C. 2925.02(A)(3), (C)(1)(a), a second-degree felony; and Count Sixteen of involuntary manslaughter in violation of R.C. 2903.04(A), (C), a first-degree felony. (Doc. No. 15). The superseding indictment alleged that the offenses described in Counts Thirteen, Fourteen, and Fifteen occurred in Hancock County, Ohio. (*Id.*). The superseding indictment also included a forfeiture specification as to Count One in addition to all of the specifications contained in the original indictment. (*Id.*). On September 8, 2016, Carpenter appeared for arraignment and entered pleas of not guilty to the new indictment. (Doc. No. 24).

{¶5} On September 22, 2016, Carpenter filed a "motion to separate trials and to dismiss indictments." (Doc. No. 26). The next day, Carpenter filed a motion to dismiss for improper venue. (Doc. No. 27). Further, on September 26, 2016, Carpenter filed a motion to suppress evidence. (Doc. No. 28).

{¶6} The State filed its memorandums in opposition to Carpenter's motions to separate trials and to dismiss the indictment on November 21, 2016 and filed its memorandum opposing Carpenter's motion to suppress on December 2, 2016. (Doc. Nos. 37, 38, 42). Ultimately, the trial court denied all of Carpenter's motions. (Doc. No. 57).

{¶7} The case proceeded to a jury trial on April 23-26, 2018. (Doc. No. 147).[1] During the trial, the State filed a motion to dismiss Counts Six and Seven of the superseding indictment, which the trial court granted. (Doc. Nos. 145, 146).

{¶8} On April 26, 2017, the jury found Carpenter guilty of Counts One, Three, Four, Five, Eight, Nine, Ten, Eleven, Twelve, Thirteen, Fourteen, Fifteen, and Sixteen but not guilty of Count Two of the superseding indictment. (Doc. Nos. 147, 148). Further, the jury found that the currency and property identified under the specifications in Counts One, Eight, Nine, and Eleven, were subject to forfeiture,

---

[1] Kelsey Degen, a forensic analyst with the Ohio Bureau of Criminal Identification and Investigation, Detective Shawn Vallery of the Tiffin Police Department, Gregory Keiser, a fireman and EMS with the Fostoria Fire Department, and Dr. Robert Forney, the chief toxicologist with the Lucas County Coroner's Office, were deposed on April 19, 2017 because they were unavailable to attend Carpenter's trial. (*See* Doc. Nos. 124, 125, 133). Their depositions were played for the jury.

that the property and some of the currency identified in Count Three were subject to forfeiture, and that the currency and some of the property identified in Count Twelve were subject to forfeiture. (*Id.*); (*Id.*). The jury also found Carpenter guilty of the specifications in Counts Eleven and Twelve alleging that Carpenter committed the offenses in the vicinity of a juvenile. (*Id.*); (*Id.*).

{¶9} On April 26, 2018, the trial court sentenced Carpenter to 12 months in prison on Counts One, Three, Nine, Ten, and Thirteen, respectively, 8 years in prison on Count Five, 18 months in prison on Counts Eight and Twelve, respectively, 36 months in prison on Count Eleven, and 11 years in prison on Count Sixteen. (Doc. No. 151). The prison terms imposed by the trial court were ordered to be served consecutively for an aggregate sentence of 19 years and 132 months in prison. (*Id.*).[2] The trial court filed its judgment entry of sentence on April 27, 2017. (*Id.*).

{¶10} Carpenter filed his notice of appeal on May 14, 2018. (Doc. No. 156). He raises three assignments of error for our review. For ease of our discussion, we will review Carpenter's second and third assignments of error together, followed by his first assignment of error.

---

[2] The trial court also ordered that Carpenter serve the aggregate sentence in this case consecutively to another case for an aggregate sentence of 19 years and 168 months in prison. (Doc. No. 151). The trial court merged Counts Four and Five, and Counts Fourteen, Fifteen, and Sixteen, for purposes of sentencing. (*Id.*).

## Assignment of Error No. II

**Appellant's convictions were not supported by legally sufficient evidence.**

## Assignment of Error No. III

**Appellant's convictions were against the manifest weight of the evidence.**

{¶11} In his second and third assignments of error, Carpenter argues that his convictions are based on insufficient evidence *and* are against the manifest weight of the evidence. In particular, in his second assignment of error, he argues that the State presented insufficient evidence that: (1) he possessed heroin, cocaine, or criminal tools; (2) he "knowingly prepared for shipment, shipped, transported, delivered, prepared for distribution, or distributed any illegal narcotics"; (3) Breech suffered serious physical harm; and (4) he was "an independently sufficient cause of Yarris'[s] death or serious physical harm." (Appellant's Brief at 26-28). In his third assignment of error, he specifically argues that the weight of the evidence shows that: (1) he did not possess heroin as alleged in Counts One and Three of the superseding indictment; (2) he did not knowingly prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute any illegal narcotics; (3) he did not provide Beech with a substance which caused her serious physical harm; and (4) the heroin that he allegedly provided Yarris "in-and-of-itself" did not cause Yarris's death or serious physical harm. (Appellant's Brief at 33).

*Standard of Review*

**{¶12}** Manifest "weight of the evidence and sufficiency of the evidence are clearly different legal concepts." *State v. Thompkins*, 78 Ohio St.3d 380, 389 (1997). Thus, we address each legal concept individually.

**{¶13}** "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33, citing *State v. Williams*, 197 Ohio App.3d 505, 2011-Ohio-6267, ¶ 25 (1st Dist.). *See also State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19 ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence."), citing *Thompkins* at 386.

{¶14} On the other hand, in determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

*Sufficiency of the Evidence Analysis*

{¶15} We begin by addressing Carpenter's sufficiency-of-the-evidence argument as it relates to his possession-of-heroin, -cocaine, and -criminal-tools convictions, followed by his sufficiency-of the-evidence argument as it relates to his trafficking convictions, then we will address his sufficiency-of-the-evidence argument as it relates to his corrupting-another-with-drugs convictions. Finally, we

will address his sufficiency-of-the-evidence argument as it relates to his involuntary-manslaughter conviction. *See State v. Velez*, 3d Dist. Putnam No. 12-13-10, 2014-Ohio-1788, ¶ 68, citing *State v. Wimmer*, 3d Dist. Marion No. 9-98-46, 1999 WL 355190, *1 (Mar. 26, 1999).

**{¶16}** Carpenter was convicted of possessing drugs under R.C. 2925.11(A), with the R.C. 2925.11(C)(6)(a) and (C)(4)(a) specifications that he possessed heroin and cocaine, respectively. R.C. 2925.11(A) provides, "No person shall knowingly obtain, possess, or use a controlled substance or a controlled substance analog."

**{¶17}** Carpenter was also convicted of possessing-criminal-tools, which is codified under R.C. 2923.24 and provides, in relevant part, "No person shall possess or have under the person's control any substance, device, instrument, or article, with purpose to use it criminally." R.C. 2923.24(A).

**{¶18}** On appeal, Carpenter argues only that there is insufficient evidence that he *possessed* the heroin, cocaine, or criminal tools. Because it is the only element that Carpenter challenges on appeal, we will review the sufficiency of the evidence supporting only as to whether he possessed the heroin, cocaine, and criminal tools.

**{¶19}** "'Possess' or 'possession' means having control over a thing or substance, but may not be inferred solely from mere access to the thing or substance through ownership or occupation of the premises upon which the thing or substance

is found." R.C. 2925.01(K). "The issue of whether a person charged with drug [or criminal-tools] possession knowingly possessed a controlled substance 'is to be determined from all the attendant facts and circumstances available.'" *State v. Brooks*, 3d Dist. Hancock No. 5-11-11, 2012-Ohio-5235, ¶ 45, quoting *State v. Teamer*, 82 Ohio St.3d 490, 492 (1998).

**{¶20}** Carpenter challenges the sufficiency of the evidence as to his possession-of-heroin convictions under Counts One and Three of the superseding indictment, possession-of-cocaine conviction under Count Nine, and possession-of-criminal-tools conviction under Count Ten.[3]  Carpenter contends that his possession-of-heroin, -cocaine, and -criminal-tools convictions are based on insufficient evidence because the State failed to prove that he *actually* possessed those items. However, in his analysis, Carpenter ignores the doctrine of constructive possession. Indeed, "[p]ossession of drugs can be either actual or constructive." *State v. Bustamante*, 3d Dist. Seneca Nos. 13-12-26 and 13-13-04, 2013-Ohio-4975, ¶ 25, citing *State v. Cooper*, 3d Dist. Marion No. 9-06-49, 2007-Ohio-4973, ¶ 2, citing *State v. Wolery*, 46 Ohio St.2d 316, 329 (1976) and *State v. Haynes*, 25 Ohio St.2d 264 (1971).

**{¶21}** "'A person has "actual possession" of an item if the item is within his immediate physical possession.'" *Id.*, quoting *State v. Williams*, 4th Dist. Ross No.

---

[3] Carpenter does not contest that he possessed criminal tools as alleged in Count 13 of the superseding indictment. (Appellant's Brief at 29).

03CA2736, 2004-Ohio-1130, ¶ 23. However, "[a] person has 'constructive possession' if he is able to exercise dominion and control over an item, even if the individual does not have immediate physical possession of it." *Id.*, citing *State v. Hankerson*, 70 Ohio St.2d 87 (1982), syllabus and *Wolery* at 329. "For constructive possession to exist, '[i]t must also be shown that the person was conscious of the presence of the object.'" *Id.*, quoting *Hankerson* at 91. "Finally, the State may prove the existence of the various elements of constructive possession of contraband by circumstantial evidence alone." *Id.*, citing *State v. Stewart*, 3d Dist. Seneca No. 13-08-18, 2009-Ohio-3411, ¶ 51. *See also Jenks*, 61 Ohio St.3d at 272-73. "Absent a defendant's admission, the surrounding facts and circumstances, including the defendant's actions, are evidence that the trier of fact can consider in determining whether the defendant had constructive possession." *State v. Voll*, 3d Dist. Union No. 14-12-04, 2012-Ohio-3900, ¶ 19, citing *State v. Norman*, 10th Dist. Franklin No. 03AP-298, 2003-Ohio-7038, ¶ 31 and *State v. Baker*, 10th Dist. Franklin No. 02AP-627, 2003-Ohio-633, ¶ 23.

{¶22} Viewing the evidence in a light most favorable to the prosecution, we conclude that Carpenter's possession-of-heroin, -cocaine, and -criminal-tools convictions under Counts One, Three, Nine, and Ten are supported by sufficient evidence. A rational trier of fact could have found that Carpenter had constructive possession of the heroin discovered on August 1 (Country Club Inn & Suites) and

on August 31 (825 South Main Street, Apartment A), 2015, respectively, and the cocaine and criminal tools discovered on October 15, 2015—that is, that he exercised dominion and control over the heroin, cocaine, and criminal tools.[4]

**{¶23}** In our review of the record, the State presented sufficient evidence that Carpenter exercised dominion and control over the heroin discovered on August 1, 2015. The heroin, discovered in Carpenter's hotel room, was found in close proximity to Carpenter. *State v. Townsend*, 2d Dist. Montgomery No. 18670, 2001 WL 959186, *3 (Aug. 24, 2001) ("Although mere presence in the vicinity of drugs does not prove dominion and control, readily accessible drugs in close proximity to an accused may constitute sufficient circumstantial evidence to support a finding of constructive possession."), citing *State v. Scalf*, 126 Ohio App.3d 614, 620 (8th Dist.1998). Carpenter was the only person found inside that hotel room at the time the heroin was discovered in plain sight on the floor of that room. *See State v. Wilson*, 8th Dist. Cuyahoga No. 102231, 2015-Ohio-4979, ¶ 32 (concluding that Wilson exercised constructive possession over drugs discovered in his hotel room because, in part, Wilson was found in the hotel room with the drugs); *State v. Williams*, 190 Ohio App.3d 645, 2010-Ohio-5259, ¶ 15 (10th Dist.) ("The cocaine

---

[4] As to the heroin discovered on August 1, 2015, Carpenter attempts to challenge the admission of cell-phone records contained in State's Exhibit 5 and Officer Elliott's testimony that such constitute evidence of "'basic trafficking lingo.'" (Appellant's Brief at 24, quoting Apr. 23, 2018 Tr., Vol. I, at 175). However, Carpenter failed to properly raise this argument as he is required to do under App.R. 12 and 16. Thus, we need not, and will not, address this argument as to his possession-of-heroin conviction under Count One.

and materials used to process crack cocaine were in plain sight once officers entered the room."); *State v. Rampey*, 5th Dist. No. 2004 CA 00102, 2006-Ohio-1383, ¶ 51 (holding that evidence is sufficient to prove knowing possession of cocaine where cocaine was found "in plain sight in [defendant's] truck after he was arrested getting out of his truck").

**{¶24}** Moreover, Carpenter exhibited some authority or control over the hotel room when he invited Officer Nate Elliott ("Officer Elliott"), formerly of the Fostoria Police Department, into the room and consented to it being searched by Officer Elliott. *See Williams* at ¶ 15 (noting that, because Williams "was the person who answered the door when the marshals knocked," it suggested "that he had some authority over or control of the hotel room"). And, importantly, Carpenter never contested that the heroin belonged to him; rather, he informed Officer Elliott that he did not use *drugs*—an implication that he was aware that the bag on the floor contained drugs. *See State v. Pierce*, 3d Dist. Paulding No. 11-09-05, 2010-Ohio-478, ¶ 31 (concluding that Pierce exercised dominion and control over a vehicle, and consequently cocaine found in the vehicle, in part, because of "his knowledge of the contents of that vehicle, particularly the glove box"); *Townsend* at *3 (concluding that Townsend exercised dominion and control over cocaine, in part, because he "appeared to be '"conscious of the presence of the [cocaine].""'"),

quoting *State v. Thomas*, 107 Ohio App.3d 239, 244 (5th Dist.1995), quoting *Hankerson*, 70 Ohio St.2d at 91.

**{¶25}** For these reasons, we conclude that a rational trier of fact could conclude beyond a reasonable doubt that Carpenter constructively possessed the heroin. Consequently, Carpenter's possession-of-heroin conviction under Count One is based on sufficient evidence.

**{¶26}** The State also presented sufficient evidence that Carpenter constructively possessed the heroin discovered on August 31, 2015. Officer Elliott informed the jury that he saw Carpenter outside of the residence located at 825 South Main Street, chased him around the residence, and eventually caught him as he was entering Apartment A. Similar to our discussion of Carpenter's heroin possession under Count One, Carpenter being found in proximity to Apartment A of 825 South Main Street (where the heroin was discovered) may not conclusively establish that he possessed the heroin discovered at that residence; rather, it is one fact that the State offered to prove that Carpenter constructively possessed the heroin found therein. *See State v. Durr*, 4th Dist. Scioto No. 11CA3411, 2012-Ohio-4691, ¶ 46 (noting that a defendant's "'[m]ere presence in the vicinity of illegal drugs, coupled with another factor or factors probative of dominion or control over the contraband, may establish constructive possession'"), quoting *State v. Riggs*, 4th Dist. Washington No. 98CA39, 1999 WL 727952, *5 (Sept. 13, 1999).

{¶27} In this case, in addition to Carpenter being in proximity of the South Main Street apartment where the heroin was discovered, the State also presented evidence that: (1) law enforcement was surveilling that location for evidence of drug trafficking; (2) law enforcement knew that Carpenter resided at the residence with Makyla La Salle Parker ("Parker"); and (3) law enforcement did not suspect that Parker was trafficking drugs. In addition, Officer Elliott informed the jury that he discovered narcotics on Jonathan Zickefoose ("Zickefoose") subsequent to stopping Zickefoose after observing Zickefoose go to the South Main Street residence.

{¶28} Moreover, Officer Elliott described for the jury the vast amount of drug evidence that law enforcement discovered in the residence. (*See* State's Ex. 15). *Compare Durr* at ¶ 51 ("'The presence of such a vast amount of drug evidence in the [house] supports an inference that [Durr] knew about the presence of the drugs and the he * * * exercised control over each of the items found.'"), quoting *Riggs* at *5, citing *State v. Soto*, 8th Dist. Cuyahoga No. 57301, 1990 WL 145651 (Oct. 4, 1990). Considering the totality of that evidence, the jury could infer that Carpenter knew that there were controlled substances in the residence and that he was capable of exercising dominion and control over those substances, including the heroin. *Durr* at ¶ 51; *State v. Miller*, 9th Dist. Wayne No. 1911, 1984 WL 4736, *3 (Feb. 1, 1984) (rejecting Miller's sufficiency-of-the-evidence argument that the State failed

to prove that he constructively possessed stolen property because he shared the residence with another person). Thus, there is sufficient evidence establishing Carpenter's constructive possession of the heroin discovered on August 31, 2015. *Durr* at ¶ 51. Therefore, Carpenter's possession-of-heroin conviction under Count Three is based on sufficient evidence.

{¶29} As to Counts Nine and Ten, the State presented sufficient evidence that Carpenter possessed cocaine and criminal tools as alleged in the superseding indictment. Officer Elliott explicitly stated that law enforcement was certain that Carpenter was present and utilizing Room 14 of the Fostoria Motel prior to executing the October 15, 2015 search warrant of the room. Further, Breech testified that she obtained the heroin, which led to her overdose, at Room 14 of the Fostoria Motel from an individual known to her as TC—whom Breech identified in the courtroom as Carpenter. Breech testified that she contacted Carpenter at a phone number known to law enforcement as belonging to Carpenter.

{¶30} Moreover, similar to the vast amount of drug evidence discovered as a result of the August 31, 2015 search warrant, law enforcement discovered a vast amount of drug evidence in Room 14, including the cocaine and digital scale at issue pursuant to the October 15, 2015 search warrant. *See Durr* at ¶ 51. Officer Elliott described to the jury how drug traffickers utilize digital scales to weigh and traffic drugs and told the jury that drug residue was found on the digital scale. Thus, based

on the totality of that evidence, we conclude that the jury could properly infer that Carpenter was aware that drugs and criminal tools were in the motel room and that he was exercising dominion and control over them. *Id.* Therefore, establishing Carpenter's constructive possession of the drugs and criminal tools in the motel room, including the cocaine and digital scale. *Id.* Accordingly, Carpenter's possession-of-cocaine and -criminal-tools convictions are based on sufficient evidence.

{¶31} Next, Carpenter challenges the sufficiency of the evidence supporting his trafficking convictions.[5] Carpenter was convicted under R.C. 2925.03 of aggravated trafficking in drugs as to Counts Eight and Fourteen of the superseding indictment, trafficking in heroin as to Count Eleven, and trafficking in cocaine as to Count Twelve. R.C. 2925.03 statute provides, in its relevant part as follows:

(A) No person shall knowingly do any of the following:

\* \* \*

(2) Prepare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog, when the offender knows or has reasonable cause to believe that the controlled substance or a controlled substance analog is intended for sale or resale by the offender or another person.

---

[5] Carpenter does not offer any argument as to how his trafficking-in-heroin conviction under Count Four of the superseding indictment is based on insufficient evidence as he is required to do under the Rules of Appellate Procedure. *State v. Stelzer*, 9th Dist. Summit No. 23174, 2006-Ohio-6912, ¶ 7, citing *State v. Cook*, 9th Dist. Summit No. 20675, 2002-Ohio-2646, ¶ 27; App.R. 12; App.R. 16. Accordingly, we decline to address the sufficiency of the evidence supporting Carpenter's trafficking-in-heroin conviction under Count Four. *See State v. Jackson*, 10th Dist. Franklin No. 14AP-670, 2015-Ohio-3322, ¶ 11, quoting App.R. 12(A)(2).

R.C. 2925.03(A)(2).

> A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist.

R.C. 2901.22(B).

**{¶32}** Carpenter argues only that there is insufficient evidence that "he knowingly prepared for shipment, shipped, transported, delivered, prepared for distribution, or distributed any illegal narcotics." (Appellant's Brief at 26, 29). Thus, we will address only those two elements of the offense.

**{¶33}** We conclude that the State presented sufficient circumstantial evidence that Carpenter knowingly prepared for shipment, shipped, transported, delivered, prepared for distribution or distributed the controlled substances at issue. "'Circumstantial evidence has long been used to successfully support drug trafficking convictions.'" *State v. Delaney*, 9th Dist. Summit No. 28663, 2018-Ohio-727, ¶ 11, quoting *State v. Washington*, 6th Dist. Ottawa No. OT-12-032, 2014-Ohio-1008, ¶ 36. "'[T]he convergence of illegal drugs, drug paraphernalia (including baggies), and large sums of cash permit a reasonable inference that a person was preparing drugs for shipment.'" *Id.*, quoting *State v. Fry*, 9th Dist. Summit No. 23211, 2007-Ohio-3240, ¶ 50, and citing *State v. Rutledge*, 6th Dist. Lucas No. L-12-1043, 2013-Ohio-1482, ¶ 15 (collecting cases and stating that "numerous courts have determined that items such as plastic baggies, digital scales,

and large sums of money are often used in drug trafficking and may constitute circumstantial evidence * * *.").

**{¶34}** First, Officer Elliott testified that the evidence discovered in Room 14 of the Fostoria Motel on October 15, 2015 is indicative of drug trafficking. He specifically described the drugs found in close proximity to the digital scale, the bindles of drugs that were packaged for sale, and the torn lottery paper, indicating that drugs had already left the premises.[6] *Compare id.* at ¶ 12; *Rutledge* at ¶ 15; *State v. Little*, 9th Dist. Lorain No. 09CA009539, 2010-Ohio-101, ¶ 16.

**{¶35}** Next, similar to Officer Elliott's testimony regarding the October 15, 2015 search warrant, Detective Brandon Bell ("Detective Bell") of the Fostoria Police Department described the drug evidence discovered through the execution of the April 2, 2016 search warrant as indicative of drug trafficking. Specifically, Detective Bell testified that the scene was indicative of drug trafficking based on the digital scale found in close proximity to drugs, the number of "pinch baggies"—used to package drugs—found, and the notebooks with squares torn out of them. *Compare Delaney* at ¶ 12; *Rutledge* at ¶ 15.

**{¶36}** Third, text messages were discovered in Yarris's phone (between Yarris and Carpenter) reflecting a conversation from April 1, 2016 appearing to

---

[6] Drug traffickers commonly use folded-up lottery tickets to package heroin. *See State v. Pitts*, 9th Dist. Medina No. 17CA0060-M, 2018-Ohio-3216, ¶ 7, 19; *State v. Dunbar*, 8th Dist. Cuyahoga No. 99740, 2014-Ohio-383, ¶ 17 (stating that lottery paper is "an item used in heroin trafficking").

arrange a drug transaction. (*See* State's Ex. 55). In the text messages, Yarris asks Carpenter if he has "any perks," to which Carpenter replies that he does not. (*Id.*). Then, Yarris asks Carpenter, "Well what do you got," to which Carpenter responds, "The usual." (*Id.*). Additional text messages from April 2, 2016—the date of Yarris's overdose death—appear to arrange a second drug transaction. In particular, Yarris asks Carpenter at 8:50 a.m. if can stop by Carpenter's "in the next hour or two." (Apr. 23, 2018 Tr., Vol. I, at 203). 14 minutes later, Yarris asked Mary Jane Yarris ("Mary Jane"), Yarris's mother, if she could take him to Royal's Pizza "in about 40 minutes." (*Id.* at 201). In addition, Yarris informs Mary Jane that he "can get the 40 bucks from dad * * *." (*Id.*). The last message sent by Yarris to anyone was sent at 11:59 a.m.—less than one hour prior to the 911 emergency call involving Yarris. That message was sent to Carpenter and stated, "I'm here." (*Id.* at 203-204).

**{¶37}** Further, Mary Jane testified that she drove Yarris to his father's office, then drove him to Royal's Pizza, which is located at the intersection of Union and Elm Streets in Fostoria. She further testified that she waited in her vehicle on Union Street and watched Yarris walk toward Elm Street, eventually returning to the vehicle after five-to-ten minutes when Yarris requested Mary Jane immediately drive him to an Arby's restaurant—the location where he was found dead.

Carpenter was residing at 621 North Union Street at that time, which is adjacent to Royal's Pizza.

**{¶38}** As we noted from Detective Bell's testimony, drug-trafficking evidence was found at that location as a result of the search warrant executed on April 2, 2016. Based on that evidence, the jury could infer that Carpenter knowingly sold or offered to sell Yarris a controlled substance. *Compare State v. Wilkinson*, 8th Dist. Cuyahoga No. 100859, 2014-Ohio-5791, ¶ 28, 32 (concluding that Wilkinson's trafficking conviction was based on sufficient evidence, in part, because "the state presented evidence of cryptic, short-worded text messages sent between Wilkinson and Marcus that would lead a reasonable person to infer that the subject matter pertained to the delivery of the parcel").

**{¶39}** Viewing this evidence in a light most favorable to the State, Carpenter's trafficking convictions are based on sufficient evidence.

**{¶40}** Next, Carpenter argues that his corrupting-another-with-drugs convictions under Counts Five and Fifteen of the superseding indictment are based on insufficient evidence because the State presented insufficient evidence (1) that Breech suffered serious physical harm and (2) that the compound containing fentanyl that Carpenter sold Yarris *independently* caused Yarris to suffer serious physical harm.

{¶41} The offense of corrupting another with drugs is codified under R.C. 2925.02 and provides, in relevant part:

> (A)  No person shall knowingly do any of the following:
>
> * * *
>
> (3)  By any means, administer or furnish to another or induce or cause another to use a controlled substance, and thereby cause serious physical harm to the other person, or cause the other person to become drug dependent.

R.C. 2925.02(A)(3).

{¶42} We begin by addressing Carpenter's argument that there is insufficient evidence that Breech suffered serious physical harm.  Because it is the only element that Carpenter challenges with respect to his conviction under Count Five, we will address only the serious-physical-harm element of the offense. "Serious physical harm" means "[a]ny physical harm that carries a substantial risk of death" and "[a]ny physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity." R.C. 2901.01(A)(5)(b), (c).

{¶43} The State presented sufficient evidence that Breech suffered serious physical harm—that is, it is undisputed that Breed suffered a non-lethal overdose. *See State v. Johnson*, 3d Dist. Crawford No. 3-10-14, 2010-Ohio-6064, ¶ 32 (concluding that Johnson's corrupting-another-with-drugs conviction was based on sufficient evidence because the State presented sufficient evidence that the victim

suffered serious physical harm from a non-lethal overdose). Dr. Patrick Bruss ("Dr. Bruss"), an emergency-medicine practitioner with Fostoria Community Hospital, testified that Breech suffered an overdose from heroin, which carries a substantial risk of death or temporary substantial incapacity. *See State v. Potee*, 12th Dist. Clermont No. CA2016-06-045, 2017-Ohio-2926, ¶ 35 (concluding that Potee's corrupting-another-with-drugs conviction was based on sufficient evidence based on, in part, the testimony of "Dr. Looman [who] testified [that] overdosing on heroin and fentanyl creates a substantial likelihood of death."); R.C. 2921.01(A)(5)(b). Likewise, Breech was unresponsive when she was discovered by her mother. *See Potee* at ¶ 35 (concluding that the State presented sufficient evidence of serious physical harm because the victim was found unconscious by first responders shortly after ingesting the narcotics), citing *State v. Church*, 12th Dist. Butler No. CA2011-04-070, 2012-Ohio-3877, ¶ 18 (stating that losing consciousness constitutes serious physical harm as defined in R.C. 2901.01(A)(5)). Thus, Carpenter's corrupting-another-with-drugs conviction under Count Five is based on sufficient evidence.

{¶44} Next, because it is necessary for the resolution of Carpenter's argument regarding his corrupting-another-with-drugs conviction under Count Fifteen, we must address Carpenter's sufficiency-of-the-evidence argument as to his involuntary-manslaughter conviction under Count Sixteen.

{¶45} The offense of involuntary manslaughter is codified under R.C. 2903.04, and provides, in relevant part, "No person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony." R.C. 2903.04(A). "The culpable mental state of involuntary manslaughter is supplied by the underlying offense." *State v. Johnson*, 8th Dist. Cuyahoga No. 94813, 2011-Ohio-1919, ¶ 54. *See State v. Brown*, 3d Dist. Hancock No. 5-17-19, 2018-Ohio-899, ¶ 11 ("'[T]he criminal intent of involuntary manslaughter is supplied by the criminal intent to do the underlying unlawful act of which the homicide is a consequence.'"), quoting *Potee* at ¶ 32.

{¶46} The predicate-felony offense in this case is aggravated trafficking in drugs under R.C. 2925.03(A)(2) as alleged in Count Fourteen. As we stated in our analysis of the sufficiency-of-the-evidence supporting Carpenter's trafficking convictions, the culpable-mental state for aggravated trafficking in drugs requires the defendant to have acted knowingly. *See* R.C. 2925.03(A)(2); R.C. 2901.22(B). Counts Fourteen and Sixteen allege that Carpenter sold or offered to sell Yarris "fentanyl or a compound, mixture, preparation, or substance containing fentanyl, a Schedule II controlled substance." (*See, e.g.*, Doc. No. 136). Accordingly, the State was required to prove that Carpenter caused Yarris's death as a proximate result of knowingly selling or offering to sell fentanyl or a compound containing fentanyl to Yarris.

{¶47} Carpenter argues that there is insufficient evidence supporting his corrupting-another-with-drugs conviction under Count Fifteen and involuntary-manslaughter conviction under Count Sixteen because "the heroin use [sic] allegedly distributed by [Carpenter] is not an independently sufficient cause of Yarris's death or serious physical harm * * *." (Appellant's Brief at 28).[7] In support of his argument, Carpenter relies on *Burrage v. United States*, 571 U.S. 204, 134 S.Ct. 881 (2014) and *State v. Kosto*, 5th Dist. Licking No. 17CA54, 2018-Ohio-1925. In its decision in *Kosto*, the Fifth District Court of Appeals applied the United States Supreme Court's holding in *Burrage* to conclude that there was insufficient evidence that the Kosto caused the victim's death as a proximate result of his committing or attempting to commit the felony offense of corrupting another with drugs. *Kosto* at ¶ 24. In particular, the Fifth District concluded that Kosto's involuntary-manslaughter conviction was based on insufficient evidence because "just as in *Burrage*, "'[n]o expert was prepared to say that [the victim] would have died from the heroin use alone.'" *Id.* at ¶ 23, quoting *Burrage* at 890. Likewise, the Fifth District relied on *Burrage* to conclude that Kosto's corrupting-another-with-drugs conviction was based on insufficient evidence because there was insufficient

---

[7] Although Carpenter references heroin, a Schedule I drug, in his brief, there is no dispute that the substance which Carpenter provided Yarris was a mixture of heroin and fentanyl. (*See* Apr. 25, 2018 Tr., Vol. III, at 399); (State's Exs., 53, 54). *See also State v. Graves*, 12th Dist. Clermont No. CA2015-03-022, 2015-Ohio-3936, ¶ 24 (noting that fentanyl is often mixed with heroin and sold).

evidence that the victim's "heroin use per se" caused the victim serious physical harm. *Id.* at ¶ 28-29.

**{¶48}** In its decision in *Burrage*, the United States Supreme Court addressed a federal sentencing-enhancement statute, which imposes "a 20-year mandatory minimum sentence on a defendant who unlawfully distributes a Schedule I or II drug, when 'death or serious bodily injury results from the use of such substance.'" *Id.* at ¶ 20, quoting 21 U.S.C. 841(b)(1)(C). The Supreme Court concluded that "at least where use of the drug distributed by the defendant is not an independently sufficient cause of the victim's death or serious bodily injury, a defendant cannot be liable under the penalty enhancement provision of 21 U.S.C. 841(b)(1)(C) unless such use is a but-for cause of the death or injury." *Burrage* at 218-219.

**{¶49}** Here, we part ways with the Fifth District's application of the Supreme Court's holding in *Burrage* and reject Carpenter's argument that he cannot be convicted of involuntary manslaughter or corrupting another with drugs. First, the Supreme Court's interpretation of a federal statute is not binding on this court's interpretation of Ohio statutes; rather, those interpretations are merely persuasive authority in interpreting *similar* Ohio statutes. *See State v. Phillips*, 27 Ohio St.2d 294, 298 (1971); *State v. Creech*, 150 Ohio St.3d 540, 2016-Ohio-8440, ¶ 31. We are unpersuaded that the Supreme Court's holding in *Burrage* is applicable to this case. Not only is the federal statute at issue in *Burrage* different from Ohio's

corrupting-another-with-drugs and involuntary-manslaughter statutes, but Ohio law defines causation differently than causation is defined in *Burrage*. *Compare State v. Irish*, 292 Neb. 513, 519-520, 873 N.W.2d 161 (2016) (addressing a state statute that imposes liability for causing serious bodily injury for driving under the influence of drugs or alcohol and concluding that *Burrage* was not instructive because "*Burrage* involved statutory interpretation of a federal statute" and "the statutory causation language in *Burrage* was 'results from,' but in [*Irish*], the statute's causation phrase is 'proximately causes'"); *State v. Burrell*, Minn.App. Nos. A17-1712 and A17-1713, 2018 WL 4391098, *2 (Sept. 17, 2018) (rejecting the application of the holding in *Burrage* to a state statute requiring proof that a defendant proximately caused a victim's death because "*Burrage* concerns a different statute, * * * which expressly applies the but-for cause language"); *People v. Nere*, Ill. No. 122566, 2018 WL 4501039, *7 (Sept. 20, 2018) ("This court has defined criminal causation in terms of a contributing cause standard for over a century. Nothing in *Burrage* requires us to abandon that standard, and nothing in *Burrage* convinces us that we should abandon that standard.").

**{¶50}** Foremost, the statute at issue in *Burrage* involved a sentencing-enhancement statute. *See, e.g.*, *State v. Christman*, 160 Wash.App. 741, 751-752, 249 P.3d 680 (2011) ("These cases are unhelpful to our analysis, however, because they involve the distinguishable context of sentencing enhancements."). *See Kosto*

at ¶ 24 (acknowledging "that in *Burrage*, the United States Supreme Court was interpreting a penalty enhancement provision in a federal statute, not an Ohio criminal statute"). Unlike the sentencing-enhancement statute at issue in *Burrage*, our analysis is focused on the elements of the crimes of involuntary manslaughter and corrupting another with drugs. The elements of those crimes require a certain result—that is, causing death or serious physical harm. *See Christman* at 752 ("By contrast, where a required element of a federal crime is a certain result, it is a basic tenet of federal criminal law that the government must prove that the defendant's conduct was the legal or proximate cause of the resulting injury."), citing *United States v. Pineda-Doval*, 614 F.3d 1019, 1026-1028 (9th Cir.2010).

**{¶51}** Next, it is well established that Ohio law generally defines "cause" in criminal cases identically to the definition of "proximate cause" in civil cases. *See, e.g.*, *State v. Emerson*, 2d Dist. Darke Nos. 2015-CA-24 and 2016-CA-1, 2016-Ohio-8509, ¶ 24. *See State v. Jacobs*, 8th Dist. Cuyahoga No. 51693, 1987 WL 10047, *2 (Apr. 23, 1987) ("It is merely a matter of semantics that criminal cases are 'cause' and 'result' and civil cases use 'proximate cause' and 'proximate result.' They mean the same thing. In fact, R.C. 2903.04 (Involuntary Manslaughter) uses 'proximate result' to state the offenses."); *State v. Tschuor*, 3d Dist. Auglaize No. 2-77-31, 1978 WL 215783, *2 (Oct. 17, 1978) (noting that the proximate-cause theory of criminal liability is the applicable standard under Ohio's involuntary-

manslaughter statute). For a criminal defendant's conduct to be the proximate cause of a certain result, it must be determined if his or her conduct was the actual and legal cause of the result. *State v. Lovelace*, 137 Ohio App.3d 206, 216 (1st Dist.1999), citing Lafave & Scott, *Criminal Law*, Section 35, 249 (1st Ed.1972). *See Burrage* at 210 ("When a crime requires 'not merely conduct but also a specified result of conduct,' a defendant generally may not be convicted unless his conduct is 'both (1) the actual cause, and (2) the "legal" cause (often called the "proximate cause") of the result.'"), quoting 1 Wayne R. LaFave, *Substantive Criminal Law*, Section 6.4(a), at 464-466 (2d Ed.2003); *Christman* at 755 (stating that "proximate cause has two components: cause in fact and legal causation."); *Irish* at 520 ("proximate cause includes 'but for' causation"); *Potee*, 2017-Ohio-2926, at ¶ 33 ("'The term "proximate result" in the involuntary manslaughter statute involves two concepts: causation and foreseeability.'"), quoting *State v. Hall*, 12th Dist. Preble No. CA2015-11-022, 2017-Ohio-879, ¶ 71.

**{¶52}** There are several tests for actual causation, the most common of which is the "but for" test; however, there are circumstances under which the "but for" test is inapplicable and an act or omission can be considered a cause in fact if it was a "substantial" or "contributing" factor in producing the result. *See Hall* at ¶ 72-73; *Emerson* at ¶ 24; *Burrage* at 215; *Christman* at 755. *See also State v. Wilson*, 10th Dist. Franklin No. 03AP-592, 2004-Ohio-2838, ¶ 18 ("The injuries inflicted

by the defendant need not be the sole cause of death, as long as they constitute a substantial factor in the death."), citing *State v. Johnson*, 60 Ohio App.2d 45, 52 (1st Dist.1977) ("In homicide cases involving the effect of expert medical testimony as to the cause of death, the general principle is that the injury need not be proved to be the direct or sole cause of death, as long as it started a chain of causation which resulted in or substantially contributed to the death."), *aff'd*, 56 Ohio St.2d 35, 40-41; Johnson, *Cause-In-Fact After Burrage v. United States*, 68 Fla.L.Rev. 1727, 1747 (2016) (highlighting Ohio as one of the jurisdictions that does not follow the "but-for" test to establish cause-in-fact causation), citing *State v. Phillips*, 74 Ohio St.3d 72 (1995). "In other words, a defendant can still be held criminally responsible where the defendant's conduct combined with other occurrences to jointly result in a legal injury." *Hall* at ¶ 72. *See also Emerson* at ¶ 24 (noting that "an offender's criminal act does not have to be the sole cause of harm"); *State v. Dunham*, 5th Dist. Richland No. 13CA26, 2014-Ohio-1042, ¶ 48 (asserting that "there may be more than one proximate cause of an injury" and, to satisfy the causal requirement, cause in fact may be established by proof "that the conduct is a substantial factor in bringing about the injury").

{¶53} The second component of causation—the legal or "proximate" cause—refers to the foreseeability of the result. *See* Katz, Martin, & Macke, *Baldwin's Ohio Practice, Criminal Law*, Section 96:4 (3d Ed.2018). *See also Hall*

at ¶ 71; *State v. Bacon*, 6th Dist. Lucas No. L-14-1112, 2016-Ohio-618, ¶ 83 ("Proximate cause has been defined as "'a direct, natural, reasonably foreseeable consequence, as opposed to an extraordinary or surprising consequence, when viewed in the light of ordinary experience.'''"), quoting *State v. Burt*, 8th Dist. Cuyahoga No. 99097, 2013-Ohio-3525, ¶ 23, quoting *State v. Muntaser*, 8th Dist. Cuyahoga No. 81915, 2003-Ohio-5809, ¶ 26-27; *Nere*, 2018 WL 4501039, at *7 (proximate cause "means that the result that actually occurs 'must be enough similar to, and occur in a manner enough similar to, the result or manner which the defendant intended (in the case of crimes of intention), or the result or manner which his reckless or negligent conduct created a risk of happening (in the case of crimes of recklessness and negligence) that the defendant may fairly be held responsible for the actual result.'"), quoting 1 LaFave at 630-31. A "'defendant will be held responsible for those foreseeable consequences which are known to be, or should be known to be, within the scope of risk created by his conduct.'" *State v. Sabo*, 3d Dist. Union No. 14-09-33, 2010-Ohio-1261, ¶ 25, quoting *State v. Losey*, 23 Ohio App.3d 93, 95 (10th Dist.1985). "'[T]hat means that death [or serious physical harm] reasonably could be anticipated by an ordinarily prudent person as likely to result under these or similar circumstances.'" *Id.*, quoting *Losey* at 95.

{¶54} We conclude that the Fifth District's decision in *Kosto* fails to address the standard of causation applied to crimes in Ohio. That is, the Fifth District failed

to consider whether the heroin that Kosto provided the victim was a substantial or contributing factor to the victim's death or serious physical harm and whether the resulting harm was foreseeable. *See State, v. Vogt*, 4th Dist. Washington No. 17CA17, 2018-Ohio-4457, ¶ 101-105 (rejecting the Fifth District's analysis in *Kosto* in favor of other Ohio Courts of Appeal that have concluded that an overdose is a "reasonably foreseeable consequence" of selling a controlled substance). Considering the way in which causation (in Ohio) is defined, we conclude that the State presented sufficient evidence that the compound containing fentanyl that Carpenter sold Yarris caused Yarris to suffer serious physical harm and caused his death.

**{¶55}** First, when construing the evidence in a light most favorable to the prosecution, any rational trier of fact could have concluded beyond a reasonable doubt that the compound containing fentanyl (that Carpenter sold Yarris) caused Yarris to suffer serious physical harm. *Compare State v. Johnson*, 3d Dist. Crawford No. 3-10-14, 2010-Ohio-6064, ¶ 8 (rejecting Johnson's argument that his corrupting-another-with drugs conviction was based on insufficient evidence "because the State failed to demonstrate that the heroin was the direct cause of [the victim's] serious physical harm [since the victim] had multiple drugs in her system at the time of her overdose, and the medical expert witnesses would not definitely say the heroin caused the overdose"). Specifically, Carpenter's conduct in selling

the compound containing fentanyl (to Yarris) was a substantial or contributing factor in causing Yarris to suffer serious physical harm. Indeed, Dr. Robert Forney ("Dr. Forney"), the chief toxicologist with the Lucas County Coroner's Office, testified that the fentanyl *contributed* to Yarris's death. *Compare Potee*, 2017-Ohio-2926, at ¶ 35 (concluding that Potee's corrupting-another-with-drugs conviction was based on sufficient evidence because the victim "died from ingesting the drugs purchased from [Potee]"). *See also State v. Stewart*, 3d Dist. Logan No. 8-17-47, 2018-Ohio-2245, ¶ 28 (concluding that there was sufficient evidence of serious physical harm because "[t]here was also testimony from the coroner detailing the serious nature of the harm that results from an overdose, which included death.").

{¶56} Moreover, it is generally accepted that "[t]he possibility of overdose is a reasonably foreseeable consequence of the sale of heroin." *State v. Patterson*, 11th Dist. Trumbull No. 2013-T-0062, 2015-Ohio-4423, ¶ 91. *See State v. Veley*, 6th Dist. Lucas No. L-16-1038, 2017-Ohio-9064, ¶ 30; *State v. Wells*, 12th Dist. Warren No. CA2016-02-009, 2017-Ohio-420, ¶ 39, citing *Patterson* at ¶ 80-95 and *State v. Zusman*, 11th Dist. Lake No. 2014-L-087, 2015-Ohio-3218.

{¶57} Therefore, a rational trier of fact could have found that Carpenter created a substantial risk of death or a risk of some permanent incapacity by selling Yarris the compound containing fentanyl, and such act was a contributing cause of Yarris's death. *Compare Emerson,* 2016-Ohio-8509, at ¶ 25 (concluding that

Emerson's corrupting-another-with-drugs conviction was based on sufficient evidence because "a reasonable juror could conclude that administration of the fentanyl to [the victim] * * * created a substantial risk of death and was a contributing cause of [the victim's] death."); *Johnson* at ¶ 32 (concluding that Johnson's corrupting-another-with-drugs conviction was based on sufficient evidence because "[t]here was testimony that Johnson provided [the victim] with all of these substances, except the Vicodin, and that [the victim] suffered serious physical harm as a result of taking these controlled substances"). Thus, under the facts presented by this case, we conclude that there is sufficient evidence that Carpenter corrupted Yarris with drugs.

{¶58} Second, the evidence that Carpenter caused Yarris's death is even more compelling based on the way in which the General Assembly drafted Ohio's involuntary-manslaughter statute. *See, e.g.*, *State v. Chambers*, 53 Ohio App.2d 266, 269 (9th Dist.1977) ("We hold that a proper interpretation of the Ohio statute necessitates our finding that, in enacting R.C. 2903.04, the legislature intended to follow the theory of proximate cause rather than the theory of agency as the underlying basis of criminal responsibility under that statute."); *State v. Dixon*, 2d Dist. Montgomery No. 18582, 2002 WL 191582, *5 (Feb. 8, 2002) (suggesting that the legislature's use of the phrase "proximate result" "clearly indicates an intent on the part of the Ohio legislature to adopt a proximate cause standard of criminal

liability."). *See also State v. Cruse*, 1st Dist. Hamilton No. C-811031, 1982 WL 8765, *2 (Dec. 15, 1982) ("The element of proximate cause (or "proximate result" as in R.C. 2903.04) is not defined in the Ohio Criminal Code, but is taken from civil negligence law.").

**{¶59}** Likewise, the trial court instructed the jury, without objection, with Ohio Jury Instruction 417.23 and 417.25 as follows:

> Cause is an act which in a natural and continuous sequence directly produces the death and without which it would not have occurred.

> Natural consequences. The defendant's responsibility is not limited to the immediate or most obvious result of the defendant's act. The defendant is also responsible for the natural and foreseeable results that follow in the ordinary course of events from the act.

> Other causes not a defense. There may be one or more causes of an event. However, * * * [i]f a defendant's act was one cause then the existence of other causes is not a defense.

(Apr. 25, 2018 Tr., Vol. III, at 513). (*See* Doc. No. 136). *See also Emerson*, 2016-Ohio-8509, at ¶ 22.

**{¶60}** Accordingly, despite the evidence that Yarris's death was caused by the combined-drug toxicity of fentanyl and Xanex as the principle agents, we conclude that the State presented sufficient evidence that Carpenter caused Yarris's death as the proximate result of selling Yarris the compound containing fentanyl. *See Emerson* at ¶ 23 (stating that "we need not resolve whether Emerson's singular act was the only cause of any lethal combination of drugs in [the victim's] system").

Stated differently, the State presented sufficient evidence that Carpenter caused Yarris's death as the proximate result of selling Yarris the compound containing fentanyl because "an offender's criminal act does not have to be the sole cause of harm" in Ohio. *Id.* at ¶ 24. Indeed, Dr. Forney informed the jury that it is "very unusual" for someone to die of ingesting too much Xanex and offered his expert-medical opinion that the fentanyl contributed to Yarris's death. *See id.* at ¶ 23, 25 (noting "that the evidence as to the cause of death does not point to a singular explanation" but concluding that "administration of the fentanyl to" the victim "was a contributing cause of [her] death"). Therefore, we conclude that the State presented sufficient evidence that the compound containing fentanyl sold by Carpenter to Yarris was a *substantial* or *contributing* factor and cause in fact of Yarris's death. *See Hall*, 2017-Ohio-879, at ¶ 76.

{¶61} Moreover, that Dr. Forney testified that Yarris's cause of death was caused by the combined-drug toxicity of fentanyl and Xanex as the principle agents does not negate that an ordinarily prudent person could reasonably anticipate that an overdose death is a likely result of selling substances containing fentanyl. *See Sabo*, 2010-Ohio-1261, at ¶ 27 ("While [the victim's] death was the result of the effects of taking multiple drugs, and neither expert could pinpoint which exact drug caused [the victim's] death, we believe that a fatal consequence was within the foreseeable scope of risk created by Sabo's conduct * * *."); *Patterson*, 2015-Ohio-

4423, at ¶ 91. *See also State v. Shoemaker*, 3d Dist. Union No. 14-06-12, 2006-Ohio-5159, ¶ 68 (concluding that the victim's "death, resulting from a morphine overdose, could have reasonably been anticipated by an ordinarily prudent person as likely to result from Shoemaker's trafficking in morphine.").

{¶62} Further, this court and other appellate jurisdictions in Ohio have rejected arguments contending that it was unforeseeable for the offender to have known that the victim had toxic levels of other significant drugs in their system when the offender provided the drug at issue. *See, e.g.*, *Sabo* at ¶ 27; *Vogt*, 2018-Ohio-4457, at ¶ 105 ("Other Ohio courts have consistently found that the possibility of an overdose is a reasonably foreseeable consequence of providing a controlled substance to another."); *Wells*, 2017-Ohio-420, at ¶ 39 ("There is nothing extraordinary or surprising about the manner of [the victim's] death in relation to appellant's actions. Appellant provided drugs to a known drug abuser. The possibility of an overdose is a reasonably foreseeable consequence of providing a controlled substance to another."); *Veley*, 2017-Ohio-9064, ¶ 25, 30. *See also State v. Luce*, 5th Dist. Ashland No. 17 COA 040, 2018-Ohio-3865, ¶ 30 (rejecting Luce's argument that the victim's overdose-death from a compound containing Carfentanil that Luce provided the victim was not foreseeable since Luce "'only' sought to sell [the victim] heroin" because Luce "was still choosing to engage in the dangerous and illegal business of street-level trafficking in controlled substances").

{¶63} Accordingly, we conclude that an overdose death is a foreseeable consequence of selling substances containing fentanyl and a rational trier of fact could have found that Yarris's death was the proximate result of Carpenter selling Yarris the compound containing fentanyl. *See Sabo* at ¶ 30. *See also Veley* at ¶ 30 (concluding that the victim's death from a heroin overdose was directly caused by appellant's sale of heroin to him and was a foreseeable result of the sale"). Carpenter's involuntary-manslaughter conviction is based on sufficient evidence.

{¶64} Having concluded that Carpenter's possession-of-heroin, -cocaine, and -criminal-tools, trafficking, corrupting-another-with-drugs, and involuntary-manslaughter convictions are based on sufficient evidence, we next address Carpenter's arguments that his possession-of-heroin, -cocaine, and -criminal-tools, trafficking, corrupting-another-with-drugs, and involuntary-manslaughter convictions are against the manifest weight of the evidence. *Velez*, 2014-Ohio-1788, at ¶ 76.

*Manifest Weight of the Evidence Analysis*

{¶65} The evidence we summarized in our sufficiency-of-the-evidence analyses supporting Carpenter's possession-of-heroin, -cocaine, and -criminal-tools, trafficking-in-drugs, corrupting-another-with-drugs, and involuntary-manslaughter convictions is weightier than the evidence against those convictions. First, regarding Carpenter's possession convictions, Carpenter makes many of the

same arguments that he makes in his sufficiency-of-the-evidence arguments challenging his possession convictions. That is, Carpenter argues that, because there is insufficient evidence that he *actually* possessed the heroin, cocaine, and criminal tools, his possession convictions are also against the manifest weight of the evidence. Notably, Carpenter again ignores the doctrine of constructive possession. Therefore, the relevant inquiry is whether the weight of the evidence demonstrates that Carpenter exercised dominion and control over the heroin, cocaine, and criminal tools. *See State v. Hilton*, 9th Dist. Summit No. 21624, 2004-Ohio-1418, ¶ 24 ("The arguments * * * that the drugs and other items found may not have actually belonged to him, are ultimately inconsequential."); *State v. Grundy*, 9th Dist. Summit No. 19016, 1998 WL 852844, *11 (Dec. 9, 1998) ("ownership is irrelevant when considering whether an individual possessed a substance").

{¶66} We conclude that the jury could reasonably infer from the evidence presented at trial that Carpenter exercised dominion and control over the heroin, cocaine, and criminal tools. "A jury can make reasonable inferences from the evidence." *State v. Knight*, 10th Dist. Franklin No. 16AP-288, 2016-Ohio-8134, ¶ 26. "'It is permissible for a jury to draw inferences from the facts presented to them.'" *Id.*, quoting *State v. Sanders*, 6th Dist. Lucas No. L-96-379, 1998 WL 78787, *3 (Feb. 13, 1998), citing *State v. Palmer*, 80 Ohio St.3d 543, 561 (1997). "'The weight given to an inference is a question for the trier of fact and will not be

disturbed unless it is such that reasonable minds could not reach such a conclusion.'" *Id.*, quoting *Sanders* at *3, citing *Palmer* at paragraph four of the syllabus. Based on our discussion of the sufficiency-of-the-evidence supporting that Carpenter constructively possessed the heroin, cocaine, and criminal tools, the jury could infer that Carpenter exercised dominion and control over those items. The evidence supporting that inference is weightier than any evidence that Carpenter's possession convictions are against the manifest weight of the evidence because the weight of the evidence may show that he did not *actually* possess those items. *See State v. Callender*, 10th Dist. Franklin No. 97APA03-391, 1998 WL 22078, *2-4 (concluding that, notwithstanding Callender's "erroneous suggestion that [he] had to exclusively possess the crack cocaine," Callender's possession conviction was not against the manifest weight of the evidence because the jury could infer that he constructively possessed the crack cocaine). Based on the evidence supporting the inference that Carpenter constructively possessed those items, we cannot say that the jury lost its way in concluding that Carpenter exercised dominion and control over the heroin, cocaine, and criminal tools. Therefore, Carpenter's possession convictions are not against the manifest weight of the evidence.

{¶67} Next, although Carpenter contends that his trafficking-in-drugs convictions under Counts Eight, Eleven, Twelve, and Fourteen are against the manifest weight of the evidence, his argument pertains to the sufficiency of the

evidence supporting those convictions. *See State v. Frye*, 3d Dist. Allen No. 1-17-30, 2018-Ohio-894, ¶ 44 ("Although Frye asserts that he is challenging the weight of the evidence supporting his convictions * * *, his argument pertains only to the sufficiency of the evidence supporting those convictions."). Indeed, the entirety of his argument that his trafficking convictions are against the manifest weight of the evidence is that "there was no evidence that [Carpenter] knowingly prepared for shipment, shipped, transported, delivered, prepared for distribution, or distributed any illegal narcotics" or that there is "no corroboration" as to who sold Breech heroin. (Appellant's Brief at 31). (*See also id.* at 34). Because Carpenter presented only a sufficiency-of-the-evidence argument regarding his trafficking convictions, we decline to conduct a manifest-weight-of-the-evidence analysis on his behalf. *State v. Yoder*, 9th Dist. Wayne No. 15AP0017, 2016-Ohio-7428, ¶ 23, citing *State v. Schmitz*, 9th Dist. Lorain Nos. 11CA010043 and 11CA010044, 2012-Ohio-2979, ¶ 36 and App.R. 16(A)(7). *See State v. Tabassum*, 9th Dist. Summit No. 25568, 2011-Ohio-6790, ¶ 5 ("Although, in the statement of his first assignment of error, Tabassum raises the issue of manifest weight, his arguments pertain only to the sufficiency of the evidence, and we limit our discussion accordingly."), citing App.R. 12(A)(2) and 16(A)(7).

{¶68} Turning to Carpenter's corrupting-another-with-drugs and involuntary-manslaughter convictions, Carpenter challenges the weight of the

evidence supporting that Breech suffered serious physical harm as alleged under Count Five and that the compound containing fentanyl that Carpenter provided Yarris independently caused him to suffer serious physical harm and independently caused his death as alleged under Counts Fifteen and Sixteen, respectively.

{¶69} In support of his argument (that his corrupting-another-with-drugs conviction under Count Five is against the manifest weight of the evidence), Carpenter argues that the evidence that Breech (1) was not administered Narcan; (2) "was lucid enough to sign a consent to search her phone"; and (3) "was merely observed for two hours and then discharged" "upon her admission to the hospital" weighs against the evidence that Breech suffered serious physical harm.[8] That evidence does not outweigh the evidence we summarized in our sufficiency-of-the-evidence analysis that Breech suffered serious physical harm. Indeed, that evidence does little to negate Dr. Bruss's expert-medical opinion that Breech's overdose carried a substantial risk of death or involved some temporary, substantial incapacity. *See Stewart*, 2018-Ohio-2245, at ¶ 28. Therefore, we conclude that Carpenter's corrupting-another-with drugs conviction under Count Five is not against the manifest weight of the evidence.

---

[8] "Narcan is a form of naloxone that is used for the emergency treatment of a known or suspected opioid overdose." *State v. Hensgen*, 12th Dist. Clermont No. CA2017-01-008, 2017-Ohio-8793, ¶ 2, fn. 1.

{¶70} Finally, Carpenter contends that his corrupting-another-with-drugs and involuntary-manslaughter convictions are against the manifest weight of the evidence based on his argument challenging the sufficiency-of-the-evidence that he cannot be convicted of involuntary manslaughter since there is no evidence that the compound containing fentanyl *independently* caused Yarris to suffer serious physical harm or *independently* caused his death.  Because we rejected that argument, Carpenter's argument that the weight of the evidence that substances other than the compound containing the fentanyl alone contributed to Yarris's serious physical harm and death does not outweigh the evidence that we summarized in our sufficiency-of-the-evidence argument that Carpenter caused Yarris to suffer serious physical harm and caused his death.  Indeed, there is no evidence in the record that any other substance caused Yarris to suffer serious physical harm or caused his death.  Consequently, Carpenter's corrupting-another-with-drugs and involuntary-manslaughter convictions are not against the manifest weight of the evidence.

{¶71} Carpenter's second and third assignments of error are overruled.

**Assignment of Error No. I**

**The Trial Court erred in its rulings denying Appellant's [1A] Motion to Separate Trials and to Dismiss Indictments, [1B] Motion to Dismiss for Improper Venue, and [1C] Motion to Suppress, which unfairly prejudiced the Appellant and denied the Appellant a fair trial.**

**{¶72}** In his first assignment of error, Carpenter argues that the trial court erred by denying his motion to separate trials, motion to dismiss for improper venue, and motion to suppress evidence.[9] Further, although it is not included in the caption of his assignment of error, Carpenter argues that the cumulative effect of those errors unfairly prejudiced him and denied him a fair trial. Because Carpenter's arguments necessarily involve four separate and distinct issues, we will first address Carpenter's separate-trials argument, followed by his dismissal-of-the-indictment argument, his suppression argument, and then his cumulative-error argument.

*Joinder*

**{¶73}** Regarding his separate-trials argument, Carpenter argues that the trial erred by denying his motion to sever or dismiss the superseding indictment because he "was prejudiced by the joinder of offenses in the two indictments." (Appellant's Brief at 19).[10] He contends that he was prejudiced because

> the State of Ohio was able to present evidence of both weaker charges (Counts 1-3 and 8-10) and stronger charges (Counts 4-4 and 11-16) together and so, the joinder of these separate and distinct weaker and stronger evidentiary offenses unfairly prejudiced him.

(*Id.* at 20).

---

[9] Carpenter directs this court to consider on appeal the arguments presented in his motion to separate trials, motion to dismiss for improper venue, motion to suppress evidence, and his closing arguments filed in the trial court in addition to the arguments presented in his brief. This court will not consider arguments that were before the trial court that are not properly raised in this court. *See* App.R. 16(A)(7); *State v. Anderson*, 5th Dist. Delaware No. 00CAA12039, 2001 WL 967900, *1 (Aug. 24, 2001) (noting that an argument "merely incoporat[ing] * * * motions made for the trial court" "does not comply with App.R. 16").

[10] Carpenter asserts that the offenses of which he was charged were joined from two indictments. They were not. Carpenter was indicted on August 8, 2016 for 13 counts in Case Number16CR0073. (Doc. No. 4). Later, on August 30, 2016, Carpenter was indicted on the same 13 counts and 3 additional counts in the *same* case number. (Doc. No. 15).

**{¶74}** As an initial matter, although Carpenter contends, as part of his argument, that the trial court should have dismissed the superseding indictment, he failed to include an argument, which he is required to do by the Rules of Appellate Procedure, regarding *how* the trial court erred by not dismissing the superseding indictment because the offenses should not have been joined. *See* App.R. 16. Indeed, dismissal is not one of the remedies provided by the Revised Code or Rules of Criminal Procedure governing the joinder of offenses. R.C. 2941.23; Crim.R. 8 and 14. Therefore, we will address only whether the trial court erred by denying Carpenter's motion for severance. *See* App.R. 12.

*Standard of Review*

**{¶75}** "Joinder is liberally permitted to conserve judicial resources, reduce the chance of incongruous results in successive trials, and diminish inconvenience to the witnesses." *State v. Schaim*, 65 Ohio St.3d 51, 58 (1992). *See also State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, ¶ 169 (establishing that it is well settled that the law favors joinder). "But there are limits governing the charging of multiple offenses in the same indictment." *State v. Jeffries*, 1st Dist. Hamilton No. C-170182, 2018-Ohio-2160, ¶ 49.

**{¶76}** Crim.R. 8(A) governs the joinder of offenses in a single indictment.

> This rule provides that "two or more offenses may be charged in the same indictment" if the offenses are (1) "of the same or similar character;" (2) "based on the same act or transaction;" (3) "based on

-45-

two or more acts or transactions connected together or constituting parts of a common scheme or plan," or (4) "part of a course of criminal conduct."

*State v. Kennedy*, 1st Dist. Hamilton No. C-120337, 2013-Ohio-4221, ¶ 23, quoting Crim.R. 8(A). *See also* R.C. 2941.04.

**{¶77}** "Where joinder is not appropriate under Crim.R. 8(A) because the offenses do not meet at least one of the four joinder requirements, the trial court should grant a motion to sever, even in the absence of prejudice." *Id.* at ¶ 24. "Whether charges were misjoined in a single indictment in contravention of Crim.R. 8(A) is an issue of law that this court reviews de novo." *Jeffries* at ¶ 51, citing *Kennedy* at ¶ 24. "De novo review is independent, without deference to the lower court's decision." *State v. Hudson*, 3d Dist. Marion No. 9-12-38, 2013-Ohio-647, ¶ 27.

**{¶78}** "If similar offenses are properly joined pursuant to Crim.R. 8(A), a defendant can still move to sever the charges pursuant to Crim.R. 14 if their consolidation will prejudice his or her rights." *Schaim*, 65 Ohio St.3d at 58. "If it appears that a defendant or the state is prejudiced by a joinder of offenses * * *, the court shall order an election or separate trial of counts * * * or provide such other relief as justice requires." Crim.R. 14. "When offenses are correctly joined, a defendant is not prejudiced by the trial court's denial of a motion for separate trials where the evidence for each count would be admissible as evidence of 'other acts'

with respect to the other counts, or where the evidence for each count is sufficiently separate and distinct so as not to lead the jury into treating it as evidence of another." *Jeffries* at ¶ 59, citing *Schaim* at 59.

**{¶79}** Generally, we review a trial court's decision on a motion to sever under Crim.R. 14 for an abuse of discretion. *State v. Kelly*, 5th Dist. Delaware No. 17CAA040023, 2018-Ohio-378, ¶ 64, citing *State v. Hand*, 107 Ohio St.3d 378, 2006-Ohio-18, ¶ 166. An abuse of discretion suggests that a decision is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157-158 (1980).

**{¶80}** "However, a defendant's failure to renew his or her Crim.R. 14 motion for severance at the close of the State's case or at the close of all evidence waives all but plain error on appeal." *State v. Howard*, 3d Dist. Marion No. 9-10-50, 2011-Ohio-3524, ¶ 82, citing *State v. Miller*, 105 Ohio App.3d 679, 691 (4th Dist.1995). *See also State v. Muller*, 3d Dist. Defiance No. 4-11-09, 2012-Ohio-3530, ¶ 34; *Kelly* at ¶ 63. "To demonstrate plain error, the defendant must demonstrate that the trial court deviated from a legal rule, the error was an obvious defect in the proceeding, and the error affected a substantial right." *Howard* at ¶ 83, citing *State v. Barnes*, 94 Ohio St.3d 21, 27 (2002). "The defendant must also demonstrate that the outcome of his trial would clearly have been different but for the trial court's errors." *Id.*, citing *State v. Waddell*, 75 Ohio St.3d 163, 166 (1996),

citing *State v. Moreland*, 50 Ohio St.3d 58. "We recognize plain error "'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice."'" *Id.*, quoting *State v. Landrum*, 53 Ohio St.3d 107, 110 (1990), quoting *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

*Analysis*

**{¶81}** Carpenter's offenses were not misjoined in contravention of Crim.R. 8(A). The offenses of which Carpenter was charged are part of a common scheme or plan. That is, the various acts at issue constituted a part of a common scheme or plan related to the sale of drugs. *Compare State v. Barksdale*, 2d Dist. Montgomery No. 21848, 2008-Ohio-182, ¶ 23 (concluding that the drug offenses were properly joined because "the various acts at issue constituted parts of a common scheme or plan" since the acts "were related to drug sales and possession over a couple of months in which police officers from several jurisdictions had staged drug buys with the help of a confidential informant"); *State v. Martin*, 11th Dist. Lake No. 2003-L-143, 2005-Ohio-688, ¶ 58, 66 (concluding that the drug offenses, which occurred on "three different dates, involve[ing] three different health care providers, and three different drugs" "were properly joined in the same indictment" because they were part "of a common scheme or plan or part of a course of criminal conduct").

{¶82} Turning to whether Carpenter was prejudiced by the joinder of the offenses, the record reveals that Carpenter failed to renew his Crim.R. 14 motion for severance at the close of the State's case or at the close of all evidence. Consequently, Carpenter waived all but plain error on appeal and Carpenter failed to demonstrate plain error in his argument. The evidence in the record of each crime is simple and distinct, involving drug and criminal-tools possessions on certain days, trafficking in certain drugs on certain days, corrupting multiple individuals with certain drugs on certain days, and causing the death of one of those individuals as the proximate result of trafficking in one of those types of drugs. *Compare State v. Thomas*, 3d Dist. Allen Nos. 1-11-25 and 1-11-26, 2012-Ohio-5577, ¶ 22 (concluding that the trial court did not err by denying Thomas's motion to sever because, in part, "the evidence of each crime in each indictment was simple and distinct, involving controlled drug buys of certain amounts of crack cocaine on certain days, drug possessions of certain amounts on certain days, and weapons possessions of certain weapons on certain days").

{¶83} Further, the evidence is direct and uncomplicated and, as we concluded in Carpenter's second assignment of error, also sufficient to sustain each verdict of guilty by the jury. *See State v. Torres*, 66 Ohio St.2d 340, 344 ("The evidence in the instant case, however, not only was direct and uncomplicated as to each indictment, but it also was amply sufficient to sustain each verdict, whether or

not the indictments were tried together."). *See also McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, at ¶ 172 (noting that "[t]he strength of the state's proof 'establishes that the prosecution did not attempt to prove one case simply by questionable evidence of other offenses'" because "the evidence of [McKnight's] guilt is 'amply sufficient to sustain each verdict, whether or not the indictments were tried together.'"), quoting *State v. Jamison*, 49 Ohio St.3d 182, 187 (1990) and *Torres* at 344; *State v. Wilkins*, 12th Dist. Clinton No. CA2007-03-007, 2008-Ohio-2739, ¶ 16 (rejecting Wilkins's severance argument "that the cumulatory effect of evidence made it more likely that a jury would find, based on the volume of evidence, that he was guilty of the more serious crimes, though those crimes are based allegedly on ambiguous evidence" because "the evidence against [Wilkins was] not weak and insubstantial").

**{¶84}** Moreover, the trial court specifically instructed the jury to "consider each count and the evidence applicable to each count separately, and [to] state [the] finding as to each count uninfluenced by [the] verdict as to the other count" because "each count in the indictment constitute [sic] a separate and distinct matter." (Apr. 25, 2018 Tr., Vol. III, at 514). *Compare Thomas* at ¶ 24. *See Torres* at 343 ("We find no merit in this claim because the jury is believed capable of segregating the proof on multiple charges when the evidence as to each of the charges is uncomplicated.").

{¶85} For these reasons, Carpenter cannot demonstrate that there was an obvious defect in the proceedings or that the outcome of his trial would have been different. Accordingly, the trial court did not commit any error, let alone plain error, by denying Carpenter's motion for severance.

*Motion to Dismiss*

{¶86} Next, Carpenter argues that the trial court erred by denying his motion to dismiss the superseding indictment based on improper venue. In particular, he contends that the trial court should have dismissed the indictment because he was prejudiced by "the admission of testimony and/or evidence at trial regarding Counts 1, 5, and 14-16 * * * since the alleged activity surrounding those counts occurred primarily in Hancock County." (Appellant's Brief at 21).

*Standard of Review*

{¶87} "A motion to dismiss charges in an indictment tests the sufficiency of the indictment, without regard to the quantity or quality of evidence that may be produced by either the State or the defendant." *State v. Balo*, 3d Dist. Allen No. 1-10-48, 2011-Ohio-3341, ¶ 35, citing *State v. Eppinger*, 162 Ohio App.3d 795, 2005-Ohio-4155, ¶ 37 (8th Dist.). "A reviewing court must examine the face of the charging instrument to determine its sufficiency." *Id.*, citing *State v. Egler*, 3d Dist. Defiance No. 4-07-22, 2008-Ohio-4053, ¶ 14, *State v. Desote*, 3d Dist. Putnam Nos. 12-03-05 and 12-03-09, 2003-Ohio-6311, ¶ 8, and *Eppinger* at ¶ 37.

**{¶88}** An appellate court reviews de novo a trial court's denial of a motion to dismiss an indictment. *State v. Robertson*, 3d Dist. Henry No. 7-14-16, 2015-Ohio-1758, ¶ 17. As we previously stated, "'[d]e novo review is independent, without deference to the lower court's decision.'" *Id.*, quoting *State v. Hudson*, 3d Dist. Marion No. 9-12-38, 2013-Ohio-647, ¶ 27.

*Analysis*

**{¶89}** "'Venue commonly refers to the appropriate place of trial for a criminal prosecution within a state.'" *Potee*, 2017-Ohio-2926, at ¶ 22, quoting *State v. Stone*, 12th Dist. Warren No. CA2007-11-132, 2008-Ohio-5671, ¶ 16, citing *State v. Meridy*, 12th Dist. Clermont No. CA2003-11-091, 2005-Ohio-241, ¶ 12. "'While venue is not a material element of an offense, the State must prove venue beyond a reasonable doubt unless it is waived by the defendant.'" *State v. Young*, 9th Dist. Lorain No. 15CA010803, 2017-Ohio-1400, ¶ 13, quoting *State v. Simpson*, 9th Dist. Summit No. 21475, 2004-Ohio-602, ¶ 72. *See also* Ohio Constitution, Article 1, Section 10; R.C. 2901.12(A). "Whether the state properly established venue turns on whether the defendant has a 'significant nexus' with the county where the trial was held." *Potee* at ¶ 22, citing *Stone* at ¶ 16.

**{¶90}** Under R.C. 2901.12(A), venue is generally placed in the territory in which an offense is committed. *See State v. Brentlinger*, 3d Dist. Allen No. 1-16-23, 2017-Ohio-2588, ¶ 56. However,

[w]hen an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, the offender may be tried for all of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred.

*State v. Armengau*, 10th Dist. Franklin No. 14AP-679, 2017-Ohio-4452, ¶ 111, citing R.C. 2901.12(H). "Offenses 'committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective' serve as 'prima facie evidence of a course of criminal conduct.'" *State v. Pearce*, 5th Dist. Ashland No. 17-COA-013, 2017-Ohio-8386, ¶ 16, quoting R.C. 2901.12(H)(3). *See also Armengau* at ¶ 112 (noting that "'a grand jury of one county has authority to indict on offenses occurring in other counties provided that those offenses are part of a course of criminal conduct'"), quoting *State v. Ahmed*, 8th Dist. Cuyahoga No. 84220, 2005-Ohio-2999, ¶ 11.

{¶91} "Because venue is neither a jurisdictional nor a material element of a criminal offense, the indictment is only required to contain an allegation that the offense was committed within the jurisdiction of the court." *Armengau* at ¶ 107, citing *State v. Andrews*, 148 Ohio App.3d 92, 95 (10th Dist.2002). "Even when multiple offenses are alleged in an indictment, an indictment is not rendered invalid where the 'place has been stated once therein.'" *Id.*, quoting *State v. Williams*, 53 Ohio App.3d 1 (10th Dist.1988), paragraph two of the syllabus.

> "[B]ecause venue is a fact that must be proven beyond a reasonable doubt by the State, a pretrial motion challenging venue is not appropriate. A defendant may only challenge venue prior to trial if it

> equates to an actual defect in the indictment, for example, if the indictment fails to allege venue."

*Young* at ¶ 13, quoting *State v. Reed*, 9th Dist. Medina No. 07CA0026-M, 2008-Ohio-1880, ¶ 14. *See also Simpson* at ¶ 73.

> If the indictment is not defective for failure to allege venue, "a defendant may only raise the issue of improper venue at trial via a Crim.R. 29 motion for acquittal, and may later appeal that decision, like any jury determination of fact, based on either the sufficiency of the evidence or manifest weight."

*Young* at ¶ 13 quoting *Simpson* at ¶ 74.

**{¶92}** On appeal, Carpenter does not challenge the sufficiency or the weight of the evidence supporting venue. Indeed, Carpenter failed to raise the issue of improper venue at trial through a Crim.R. 29 motion. Instead, Carpenter argues only that the trial court should have granted his pretrial motion challenging venue. *Compare Simpson* at ¶ 74 ("Therefore, Mr. Simpson's allegations that the trial court erred in denying his pretrial motion to quash based on improper venue is completely meritless. Absent a defect in the indictment, Mr. Simpson may not challenge venue in that manner."). Because a pretrial motion challenging venue is improper, we may review only whether there is an actual defect in the indictment. *Young* at ¶ 13; *Simpson* at ¶ 73. Here, there is not. *See Simpson* at ¶ 73. The superseding indictment is not invalid on its face because it alleges the places in which the offenses allegedly occurred. *See State v. Andrews*, 148 Ohio App.3d 92, 2002-Ohio-787, ¶ 27 (10th Dist.) (concluding that "the indictment contained a sufficient

-54-

allegation that the offense was committed within the geographical jurisdiction of the court to defeat a motion to dismiss based upon improper venue" because the indictment reflected that the offense allegedly occurred in Franklin County). Therefore, the trial court did not err by denying Carpenter's motion to dismiss the indictment.

*Motion to Suppress*

**{¶93}** Third, Carpenter argues that the trial court erred by denying his motion to suppress evidence. Specifically, he argues that there was insufficient evidence of probable cause to issue the search warrants and that evidence of the illegal searches should be suppressed. This is another argument in which Carpenter failed to comply with the Rules of Appellate Procedure by presenting the reasons in support of his contention that the search warrants were issued without sufficient evidence of probable cause with citations to the authorities, statutes, and parts of the record on which he relies. *See State v. Jackson*, 10th Dist. Franklin No. 14AP-670, 2015-Ohio-3322, ¶ 11, quoting App.R. 16(A)(7). However, in the interest of justice, we will address the merits of Carpenter's suppression arguments. *See State v. Thomas*, 3d Dist. Mercer No. 10-10-17, 2011-Ohio-4337, ¶ 25.

*Standard of Review*

**{¶94}** A review of the denial of a motion to suppress involves mixed questions of law and fact. *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372,

¶ 8. At a suppression hearing, the trial court assumes the role of trier of fact and, as such, is in the best position to evaluate the evidence and the credibility of witnesses. *Id.* *See also State v. Carter*, 72 Ohio St.3d 545, 552 (1995). When reviewing a ruling on a motion to suppress, "an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Burnside* at ¶ 8, citing *State v. Fanning*, 1 Ohio St.3d 19 (1982). With respect to the trial court's conclusions of law, however, our standard of review is de novo, and we must independently determine whether the facts satisfy the applicable legal standard. *Id.*, citing *State v. McNamara*, 124 Ohio App.3d 706 (4th Dist.1997).

*Analysis*

{¶95} "The Fourth Amendment to the United States Constitution requires that warrants issue only 'upon probable cause.'" *State v. Gonzales*, 3d Dist. Seneca Nos. 13-13-31 and 13-13-32, 2014-Ohio-557, ¶ 18. "Probable cause 'means less than evidence which would justify condemnation,' so that only the 'probability, and not a prima facie showing of criminal activity is the standard of probable cause.'" *Id.*, quoting *State v. George*, 45 Ohio St.3d 325, 329 (1989). "To search for evidence of a crime there must 'be a nexus * * * between the item to be seized and criminal behavior' as well as 'cause to believe that the evidence sought will aid in a particular apprehension or conviction.'" *Id.*, quoting *Warden, Maryland Penitentiary v. Hayden*, 387 U.S. 294, 307, 87 S.Ct. 1642 (1967).

> When determining "the sufficiency of probable cause in an affidavit submitted to support a search warrant, '[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him including "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"

*Id.* at ¶ 19, quoting *George* at paragraph one of the syllabus, quoting *Illinois v. Gates*, 462 U.S. 213, 238-239, 103 S .Ct. 2317 (1983).

> A reviewing court should not conduct a de novo review of [the issuing authority's] determination of probable cause. Rather, "the duty of a reviewing court is simply to ensure that the [issuing authority] had a substantial basis for concluding that probable cause existed," according "great deference to the [issuing authority's] determination of probable cause" and resolving "doubtful or marginal cases in this area * * * in favor of upholding the warrant."

*Id.*, quoting *George* at paragraph two of the syllabus.

**{¶96}** "In sum, on appeal, when we are reviewing the issuing [authority's] determination of probable cause, the review is limited to ensuring that the [issuing authority] 'had a substantial basis for concluding that probable cause existed.'" *Id.* at ¶ 19, quoting *State v. Garza*, 3d Dist. Henry No. 7-13-04, 2013-Ohio-5492, ¶ 19, citing *George*.

**{¶97}** On appeal, Carpenter challenges whether that the affidavits in support of the August 31, 2015, October 15, 2015, and April 2, 2016 search warrants were sufficient for the issuing judge to conclude that there was a substantial basis that probable cause existed. Contrary to Carpenter's argument, the search-warrant

affidavits contain several references specific to Carpenter, indicating that drugs were at the residences in question. *Compare id.* at ¶ 24 ("Despite Gonzales's arguments, Detective Armstrong's affidavit contained several provisions specific to Gonzales, indicating drugs were at the residence in question.").

{¶98} Specifically, the affidavit used in supporting the issuance of the August 31, 2015 search warrant contains ample information related to law enforcement's investigation of Carpenter for illegal-drug activity at 825 South Main Street, Apartment A, in Fostoria. (*See* State's Suppr. Ex. 3). In particular, Officer Elliott attested that law enforcement received reports that Carpenter was distributing crack cocaine and heroin in Fostoria; that Carpenter resided at 825 South Main Street, Apartment A; and that crack cocaine and heroin were being sold from 825 South Main Street, Apartment A.

{¶99} Likewise, in addition to the information supporting the August 31, 2015 search warrant, Officer Elliott's affidavit relative to the October 15, 2015 search warrant reflects law enforcement's continued investigation of Carpenter for illegal-drug activity in Fostoria subsequent to the execution of the August 31, 2015 search warrant. (*See* State's Suppr. Ex. 6). In particular, the affidavit contains a substantial amount of information that Carpenter was engaging in illegal-drug activity at Room 14 of the Fostoria Motel. Further, Officer Elliot's affidavit sets forth that he observed Carpenter exiting Room 14 of the Fostoria Motel on October

12, 2015 and that he learned (from Breech) that Carpenter sold her heroin at Room 14 of the Fostoria Motel on October 13, 2015.

**{¶100}** Finally, Detective Bell's affidavit used to secure the April 2, 2016 search warrant reflects the drug-evidence discovered as part of the August 31 and October 15, 2015 search warrants as well as information related to law enforcement's continued investigation of Carpenter for drug-related activity since the October 15, 2015 search-warrant execution. (*See* State's Suppr. Ex. 9). Detective Bell specifically avers in his affidavit that reliable confidential informants purchased heroin from Carpenter at 415 1/2 North Main Street in Fostoria in January 2016; that Carpenter took up residence at 621 North Union Street in Fostoria after he was evicted from 415 1/2 North Main Street on February 4, 2016; that a confidential informant purchased heroin from Carpenter at 621 North Union Street; and that law enforcement suspected that Carpenter sold Yarris the heroin which led to Yarris's overdose death.

**{¶101}** Based on the totality of the circumstances, we conclude that there is sufficient evidence in the affidavits for the issuing judge to conclude that there was a substantial basis that probable cause existed. *Gonzales*, 2014-Ohio-557, at ¶ 26. Therefore, the trial court did not err by denying Carpenter's motion to suppress evidence.

*Cumulative Error*

**{¶102}** Finally, Carpenter argues that the cumulative effect of the trial courts errors denied him a fair trial.

*Standard of Review*

**{¶103}** "Under [the] doctrine of cumulative error, a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial court error does not individually constitute cause for reversal." *State v. Spencer*, 3d Dist. Marion No. 9-13-50, 2015-Ohio-52, ¶ 83, citing *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-2577, ¶ 222-224 and *State v. Garner*, 74 Ohio St.3d 49, 64 (1995). "To find cumulative error, a court must first find multiple errors committed at trial and determine that there is a reasonable probability that the outcome below would have been different but for the combination of the harmless errors." *State v. Stober*, 3d Dist. Putnam No. 12-13-13, 2014-Ohio-5629, ¶ 15, quoting *In re J.M.*, 3d. Dist. Putnam No. 12-11-06, 2012-Ohio-1467, ¶ 36.

*Analysis*

**{¶104}** Because we found no error as alleged by Carpenter in his first assignment of error, the doctrine of cumulative error does not apply. *State v. Bertuzzi*, 3d Dist. Marion No. 9-13-12, 2014-Ohio-5093, ¶ 110.

**{¶105}** Carpenter's first assignment of error is overruled.

**{¶106}** Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW and PRESTON, J.J., concur.**

**/jlr**